THE WYANDOTTE COUNTY GAS COMPANY, *Appellant,* v. JOHN SPAETH, *as County Treasurer, etc., et al., Appellees.*

No. 17,072.

SYLLABUS BY THE COURT.

CORPORATIONS—*Amount of Capital Stock Assessable as Personal Property.* The method of arriving at the amount of a gas company's capital stock assessable to the corporation as personal property considered, and rules governing the subject stated.

Appeal from Wyandotte district court. Opinion filed July 9, 1910. Reversed.

*J. W. Dana,* for the appellant; *George R. Allen* of counsel.

*Joseph Taggart,* county attorney, and *Keplinger & Trickett,* for the appellees.

The opinion of the court was delivered by

BURCH, J.: The Wyandotte County Gas Company, a domestic corporation having its principal office in Wyandotte county, sought to enjoin the collection of personal-property taxes assessed against it. A demurrer was sustained to its petition, and the plaintiff appeals. The chief contentions are that the board of tax commissioners, acting as an appellate board of equalization, pursued an illegal method and acted in an arbitrary and oppressive manner in increasing the valuation of the plaintiff's capital stock.

Prior to November, 1908, a foreign corporation owned a gas plant in Wyandotte county. It held a franchise from the city of Kansas City to supply the city and its inhabitants with manufactured gas, and held another franchise to supply the city and its inhabitants with natural gas. In the month mentioned the plaintiff took over the property and franchises of the foreign company, and issued therefor its total capital stock, consisting of 10,000 shares of the par value of $100 each. In the year 1908 the assessor assessed the entire plant as real estate, in the sum of $801,940. In 1909 there was added, by the assessor, extensions of mains valued as real estate at $38,770, and personal property valued at $41,300, making a total property valuation of $882,010 for the year 1909. The petition alleges that this valuation took into account not only physical property but the plaintiff's franchises, the earning capacity of the plant, its good will and its value as a going concern. With its personal-property statement the plaintiff returned a statement of capital paid in, showing 10,000 shares of the total actual value in money of $825,000. The county board of equalization made an order increasing "the capital-stock assessment" in the sum of $600,000, making a total capital-stock valuation of $1,425,000. The real and personal property valuations were not changed. The plaintiff

appealed to the state board of equalization.   After a hearing this tribunal made the following findings:

"(1)  The equalized assessed real-estate value of appellant in the sum of $862,970 is the correct and true value of the property assessed.

"(2)  The value of the personal property of the appellant for purposes of taxation as fixed by the deputy assessor, in the sum of $41,300, is the correct and true value of the property so assessed.

"(3)  The value of the capital stock of the appellant is found by this board to be $1,400,000, from which must be deducted the assessed value of the real estate and personal property owned by and assessed to appellant.

"The assessed value of the real estate, in the sum of $862,970, and the assessed value of the personal property, in the sum of $41,300, making a total of $904,270, must be deducted from the capital-stock value, as follows:

Total value of capital stock.............. $1,400,000
Total assessed value of real and personal
  property ..........................    904,270
                                        _____
                                          $495,730

"This board finds therefrom that there is a capital-stock value subject to assessment in the sum of $495,-730.   It is therefore ordered that the personal-property assessment of the Wyandotte County Gas Company for purposes of taxation for the year 1909 be equalized as follows:  The tangible personal property is fixed at $41,300, and the capital-stock valuation of said corporation for assessment purposes at $495,730.

"The county clerk of the county of Wyandotte is directed to extend taxes against values owned by the Wyandotte County Gas Company as follows:

Against real estate..................... $862,970
Against personal property...............    41,300
Against capital stock...................   495,730
                                         _____
                                         $1,400,000

The state board made a clerical error in its figures, but the merits of the controversy are not affected.

The law required the full amount of the plaintiff's capital stock paid in and remaining as capital stock to

13—83 KAN.

be assessed as personal property, at its true value in money, from which the amount of stock invested in listed real or personal property must be deducted (Laws 1908, ch. 80, § 1, Gen. Stat. 1909, § 9229). Sections 9336 and 9337 of the General Statutes of 1909 (Laws 1905, ch. 503, §§ 1, 2) read as follow:

"That all fixed mains, flumes, aqueducts, reservoirs, receptacles, standpipes, purifiers, regulators, lamps, lamp-posts, meters, shackle rods, plugs, tanks, wires, and all other property, whether herein enumerated or not, used as part of a system and employed in leading, conducting or distributing heat, light, power, oil, gas, water or other commodity between the place of generation, production or supply to [and] the place of distribution, consumption, use, manufacture, market, or further shipment shall be listed and taxed by the city, town, school district, township or county in which said property or any part thereof is located, and in the same manner returned as is provided by law for real estate.

"If the property described in section 1 be that of any company, corporation or copartnership the assets of which is represented by shares of capital stock, the said property in section 1 shall be deducted at its true value from the total true value of all the stock of the said company, copartnership, or corporation."

Real estate includes not only the land itself, but also all buildings, fixtures and improvements and rights and privileges appurtenant thereto. (Laws 1907, ch. 408, § 1, Gen. Stat. 1909, § 9215.) No special provision is made for the listing, valuation and taxation of corporate franchises to occupy streets, supply the public with gas, and the like.

It is argued that the state board, in valuing the plaintiff's real estate, was bound to regard as appurtenant thereto all of the intangible factors which give its capital stock value; that the assessor did this; that the valuation placed by the assessor upon the real and personal property, into which the plaintiff's entire capital, with all its incidents, had gone, were approved by the state board; and consequently that there was

no basis in law or in fact for an added "capital-stock value" of approximately a half million dollars.

When the state board undertook to value the plaintiff's capital stock the question was, What was its usual selling price in money, if there were such a price? If there were no usual selling price, then the question was, What did the board believe could be obtained for it in money? (Laws 1876, ch. 34, § 15, Gen. Stat. 1909, § 9247.) Very lately a gas plant, with land and other tangible property, with franchises and with various intangible incidents, had been obtained for this very stock. Could $1,400,000 in money be obtained for it? If the board in good faith believed so, as a fair business proposition, that was the proper value to place upon it for purposes of taxation.

Why should the state board believe the plaintiff's capital stock is worth so much money? In the first place, the corporation holds franchises which constitute property of which it can not be deprived without due process of law. Ordinarily franchise ordinances constitute contracts, the obligation of which can not be impaired. Franchises like those the plaintiff enjoys may be bought and sold for a price in money. The plaintiff bought them, and they constitute an asset which contributes to the value of its capital stock. If the plaintiff should be granted a new long-term franchise, giving it better privileges than those it now enjoys, its capital stock would rise in value at once. In the next place, the plaintiff's capital stock is valuable on account of the advantages the corporation possesses as an established, going concern, which not only has the capacity and the opportunity to earn money but which is in fact producing a revenue. Other intangible factors contributing to the money value of the plaintiff's capital stock might be enumerated, but the two which have been mentioned are sufficient to illustrate the principle, and their value may be proved by a concrete example.

In the case of *Water Co. v. Galena,* 74 Kan. 644, 646, the city decided to take over the water works, as it had the right to do. The question was, What should the city pay? The referee found that the physical property alone was worth $60,185.27. He further found from the evidence presented that the unexpired franchise and going-concern value of the plant amounted to $15,214.73 more.. The city was required to pay this additional item. It can not be doubted that the value of the water company's capital stock was augmented by this amount. If the assessor had called upon the company for its tax statement it would have been obliged to return its capital stock at $75,400 (assuming it had no other assets than those under consideration). From this sum would have been deducted the amount invested in real and personal property, $60,185.27. The remainder, $15,214.73, would have constituted the capital-stock value assessable to the corporation as personal property.

From the foregoing the conclusion must be that in valuing capital stock for assessment it must be considered as the representative of all value-producing elements attending the corporate enterprise, including not only tangible assets but intangible rights, privileges and franchises, and good will and going-concern value as well. On the other hand, whatever reduces value must be taken into account, the question being, What sum is it believed can be obtained for the corporation's capital stock in money?

For many purposes intangible interests like those discussed may be considered as appurtenant to tangible property. Whenever they can not be reached for purposes of taxation in any other way they will be so considered, but the adoption of that method is not always essential. Take the common case of a promoter's company. The corporation is organized and some of its capital stock is paid in. It is granted valuable franchises which it can sell at once for a large

Gas Co. v. Spaeth.

sum of money, and which it can transfer by assignment or bill of sale. The assessable value of the company's capital stock has been increased by the salable value of the franchises, although no portion of the capital stock has been invested in tangible property to which the franchise element of value may attach. In the Galena case the referee found from the testimony of witnesses an unexpired-franchise and going-concern value, separate and apart from the value of the physical property. As a simple business transaction between a buyer and a seller there was no difficulty whatever in distinguishing the items and stating the true value of each one in money. There is no reason why the matter should become involved in confusion and mystery if an impartial assessor or board of equalization should be placed in the shoes of the impartial referee.

In making its valuation the state board was not obliged to disintegrate the plaintiff's capital stock into its various value-contributing elements and set opposite to each one a specific sum. Capital stock may be valued as an integral whole, much like an industrial plant, which represents a combination of elements whose very combination may be a considerable factor in creating value.

In order to arrive at the quantity of the plaintiff's capital stock ultimately assessable as personalty it was necessary that the state board should deduct from the total value the amount of such stock invested in listed real and personal property. To make the deduction it was necessary to value the plaintiff's listed real and personal property, and in doing this the intangible factors considered in connection with capital stock could not be considered again as factors in the value of tangible property. To do so would be to include and ultimately to tax them twice, once as capital stock and again as tangible property.

Double taxation is not so utterly vicious that it can

not be tolerated at all. Probably no revenue system can be devised which will be wholly free from such a result. Double taxation is avoided as a matter of legislative policy, and not because of any inflexible rule of law condemning it. Therefore all that can be said is that the tax laws are to be construed and administered to prevent double taxation as far as possible. In this case there is no occasion for duplication.

In valuing the plaintiff's plant the state board had the right to consider it as an organized whole, and to consider it with reference to its adequacy and its adaptability to subserve the purposes of a corporation in the plaintiff's situation and enjoying its privileges and advantages. Such factors necessarily enter into the true money value of the physical property.

In valuing the listed real estate and personal property into which a portion of the plaintiff's capital stock had gone the state board was not bound by the assessor's figures of the year before. The state board was not valuing the listed real estate and personal property for purposes of assessment. It was determining the net amount of capital stock assessable as personalty.

From what has been said it appears that the method adopted by the state board is not open to criticism, and the only remaining question is whether the petition contains sufficient allegations of arbitrary and capricious conduct and want of good faith in assigning values. With much reluctance the court holds that the petition makes a paper case for equitable relief. It is not necessary to analyze and review the allegations of the petition. Other subjects discussed in the briefs do not require special mention.

The judgment of the district court is reversed, and the cause is remanded with instruction to overrule the demurrer to the petition.