Kessler v. Frost.

No. 21,670.

JACOB KESSLER, *Appellant,* v. W. G. FROST et al., *Appellees.*
JOHN E. DOUGLAS, *Appellant,* v. W. G. FROST et al., *Appellees.*
J. G. WILSON, *Appellant,* v. W. G. FROST et al., *Appellees.*

(CONSOLIDATED.)

SYLLABUS BY THE COURT.

1. GARNISHMENT — *Proceeds of Mortgage on Homestead — Exemptions.*
Creditors, whose claims were not shown to be lienable, garnished a
bank holding certain money of the defendants, the proceeds of a mort-
gage on their homestead, placed thereon for the purpose of paying in-
debtedness incurred for the erection of improvements theretofore
placed on such homestead. *Held,* that the fund was exempt from the
claims of the plaintiffs.

2. SAME—*Motion to Discharge—No Matter for Jury.* On the hearing of
a motion to discharge the garnishments the court properly denied the
plaintiffs' request for a jury.

Appeal from Woodson district court; OSCAR FOUST, judge.
Opinion filed November 9, 1918. Affirmed.

*S. C. Holmes,* of Yates Center, for the appellants.

*G. H. Lamb,* and *W. E. Hogueland,* both of Yates Center, for
the appellees.

The opinion of the court was delivered by

WEST, J.: A bank in which the defendant Frost had de-
posited certain money was garnished in actions to recover on
certain promissory notes. The garnishments were discharged
on the ground that the money was exempt, and the plaintiffs
appeal.

The defendant asserts the exempt character of the fund be-
cause borrowed for the purpose of paying for improvements on
his homestead. His evidence, in substance, was that he with
his family had occupied his farm as a homestead for about
eighteen years; that about June, 1917, he made a loan thereon
for $6,000, paid off a loan of $3,600 out of the proceeds, and a
commission note or two, paid the garnishee about $500, drew
out about $100 for his own use, and left about $1,100 in the
bank, with which he intended to pay an obligation at another
bank that had been accumulating there for silos and other im-

provements he had put on his place; that he owed this other bank about $3,500, for which it held security on cattle and horses worth about $2,000 and some implements worth about $100; that when he built the silos he drew his checks and this bank paid them.   He testified:

"I expected to use this money the same as any other money.   I never intended to use any of this money to pay off the loan on the homestead."

He further testified that he intended to pay two of the plaintiffs out of this money, if he did not get another place; that he intended to pay them sometime; that he had owed them for a number of years and intended to pay them out of this money he got, if he got no other; and that he was treating this money the same as any other.

The wife testified that the money deposited in the bank in her husband's name "came from the loan we made on the home."   She knew of her husband's owing the other bank the money advanced to build silos.   She and her husband talked over the matter of making the loan.   She signed the note and mortgage in order to raise money to pay the money advanced by the other bank to pay for silos and other improvements on the farm.   That was the reason she consented to mortgage the homestead.

It appears that the husband had talked some of trading his farm for western land, but he testified that he did not intend to do so when he made this loan, saying "This is the only place I ever owned and everything I bought went on this place."

It was alleged that the notes sued on were for money which went to the erection of improvements on the homestead, but this claim was waived by all but one of the plaintiffs, whose claim of lien was by the trial court denied.   Hence, the exemption question is the only one presented.

Of course, any part of the deposit which Mr. Frost intended to use for ordinary expenses would not be exempt, but as only about $100 seems to have been thus used and as the amount garnished was apparently enough to pay all the claim sued on, the result depends on the character of the remaining fund on deposit, which character in turn depends on the intention the depositor had when he left it in the bank.   (*Smith v. Gore,* 23 Kan. 488; *Milberger v. Veselsky,* 97 Kan. 433, 155 Pac. 957.) In *Brenneke v. Duigenan,* 6 Kan. App. 229, it was held that—

Kessler v. Frost.

"The husband and wife have a right to sell or mortgage the homestead, and the money derived from such sale or mortgage is exempt." (syl. ¶ 1.)

The defendants could have sold their homestead and devoted the proceeds to other purposes, or they could have used the proceeds to buy another homestead and, such intention existing, such proceeds would have been exempt. The general purport of the husband's testimony was that he intended to repay the other bank the money it had advanced for building silos. The wife testified that for this purpose only she signed the mortgage, and there is therefore fair support for the conclusion of the trial court that the money was exempt.

A mortgage on the homestead for the purpose of paying for improvements could not legally harm general creditors; neither could they resort to the proceeds to pay their nonlienable claims.

The motion to discharge the garnishment was heard by the court on an adjourned day of the June term. A jury was demanded and denied. The statute (Gen. Stat. 1915, § 7215) provides that issues of law and motions may be heard by the court or judge in term-time or vacation. No authorities are cited to buttress the contention that on the hearing of this motion the plaintiffs were entiled to a jury. Usually motions are triable by the court. Indeed the presentation and determination of a motion have been termed a hearing instead of a trial. (*McDermott v. Halleck,* 65 Kan. 403, 69 Pac. 335.) There is no provision for making up issues as to the trial of motions. (*Berry v. Dewey,* 102 Kan. 392, 170 Pac. 1000.) Juries are for the trial of issues of fact, and a demand for a jury on the hearing of these motions was properly denied.

The judgment is affirmed.