In re Barbara E. HODES, Debtor.

In re Phillip Hodes, Debtor.

Bankruptcy Nos. 98–20039–
7, 98–20040–7.

United States Bankruptcy Court,
D. Kansas.

June 16, 1999.

Cynthia F. Grimes, Grimes & Rebein, L.C., Lenexa, KS, for Debtor.

Eric C. Rajala, Overland Park, KS, trustee.

Mark S. Carder, Stinson Mag & Fizzell, Kansas City, MO.

Michael L. Kahn, Stinson, Mag & Fizzell, P.C., Overland Park, KS.

## MEMORANDUM OPINION AND ORDER

JULIE A. ROBINSON, Bankruptcy Judge.

Judgment Creditors, Lawrence S. Jenkins and Roger W. Hood, M.D., filed an objection to the debtors', Phillip Hodes and Barbara Hodes, claimed homestead exemption. The parties have submitted this matter on briefs and deposition transcripts. Their submissions evidence no genuine dispute of the pertinent facts. The matter is now ready for decision. The pivotal issue in this case is whether in an involuntary case, the property subject to exemption is the property in existence on the date the involuntary petition was filed, or the date that the order for relief was entered. In this case, on the petition date, the debtors owned a home. On the date that the orders for relief were entered, the debtors owned a home that was undergoing improvements by a builder who was drawing from a cash deposit paid to him prepetition. This Court concludes that the property subject to exemption is the property in existence on the date of the entry of the orders for relief, and that under these facts, the cost of the home improvements made before and after the entry of the orders for relief is exempt, although the construction was incomplete on the date of the entry of the orders for relief.

### JURISDICTION

The Court has jurisdiction over this proceeding. 28 U.S.C. § 1334. This is a core proceeding. 28 U.S.C. § 157(b)(2)(B).

### FINDINGS OF FACT

In 1993, Jenkins and Hood commenced a civil action against Phillip and Barbara Hodes seeking damages from a breach of a contract concerning the Hodeses' sale of their interest in certain corporate stock to Jenkins and Hood. On November 10, 1997, a jury returned a verdict against the Hodeses and other codefendants and in favor of Jenkins and Hood for $4 million.

On November 17, 1997, the court entered a judgment in accordance with the verdict.

Soon thereafter, the Hodeses began liquidating approximately $514,000 in nonexempt securities and acquiring exempt assets with the funds. The Hodeses used part of this money to prepay a home builder for an addition to their home in Leawood, Kansas. There is no allegation that any of the funds paid to the builder were fraudulently obtained. The Hodeses contend that they began discussions with the home builder in the summer of 1997, when they decided to enlarge their home in anticipation of the birth of their daughter's twins. The twins were not going to live with them, but the Hodeses wanted more space so that they could babysit the twins. On December 7, 1997, the Hodeses entered into a contract with the builder and gave him a $250,000 cash deposit. The contract estimated that the addition would cost $190,000 plus the builder's 15% fee, but no more than a total of $250,000. The contract called for a 1056 square foot addition to the Hodeses' 3700 square foot home. The addition included an office, an enlarged family room and modifications to the master bedroom. The Hodeses had purchased this home in 1989 for $545,000.

On January 6, 1998, Jenkins and Hood filed involuntary Chapter 7 bankruptcy petitions against Phillip Hodes and Barbara Hodes. As of January 6, the builder had not commenced construction of the addition and was in possession of the $250,000 deposit.

The construction commenced sometime after January 6. On February 23, 1998, Jenkins and Hood filed a motion under § 303(f)[1] to stop the construction and to restrict the Hodeses' use of the deposited funds prior to entry of the orders for relief. The parties attempted to resolve this contested § 303(f) motion and on March 2, 1998, recited the terms of their settlement to the Court. The settlement included the Hodeses' agreement to obtain a mortgage on their home and use these borrowed funds to pay $290,000 to Jenkins and Hood. Later, when the Hodeses failed to pay the $290,000, Jenkins and Hood filed a motion to compel settlement. In their submissions on the exemption issue, the parties did not refer to this motion to compel. The courtroom minute sheet from the hearing on October 28, 1998, states that Jenkins and Hood agreed to withdraw their motion to compel, but they have not yet submitted a journal entry withdrawing the motion.

In the meantime, construction of the home addition proceeded. On April 16, 1998, the Hodeses consented to the entry of orders for relief in their cases on that date. At the time of the entry of the orders for relief, the builder had expended $8,966.67 of the deposit. As of October 28, 1998,[2] the builder had expended a total of $164,837.24.

## CONCLUSIONS OF LAW

In their schedules, the Hodeses acknowledge that the $250,000 on deposit with the builder is property of the estate, but claim the funds exempt as improvements to their homestead. In Kansas, debtors may exempt their homestead, including improvements on the homestead, pursuant to K.S.A. 60–2301, which states:

A homestead to the extent of 160 acres of farming land, or of one acre within the limits of an incorporated town or city, or a manufactured home or mobile home, occupied as a residence by the owner or by the family of the owner, or by both the owner and the family thereof, together with all the improvements on the same, shall be exempted from

---

1. 11 U.S.C. § 303(f) provides that unless the Court orders otherwise, and until an order for relief is entered, the debtor may continue to use, acquire or dispose of property as if the involuntary case concerning the debtor had not been commenced.

2. This is the date Jenkins and Hood filed their Supplemental Brief in Support of Objection to Exemptions.

forced sale under any process of law, and shall not be alienated without the joint consent of husband and wife, when that relation exists; but no property shall be exempt from sale for taxes, or for the payment of obligations contracted for the purchase of said premises, or for the erection of improvements thereon. The provisions of this section shall not apply to any process of law obtained by virtue of a lien given by the consent of both husband and wife, when that relation exists.[3]

■ The Kansas Constitution provides for this homestead exemption, as well.[4] The homestead laws of Kansas are to be liberally construed in favor of those claiming the exemption.[5] The purpose of the homestead exemption is to protect the family from destitution as they begin their fresh start and to benefit society by preventing her citizens from becoming paupers.[6]

■ Jenkins and Hood posit three reasons why these funds expended on the improvements to the Hodeses's homestead are not exempt. Two of these arguments are clearly without merit. First, Jenkins and Hood contend that the Hodeses waived their exemption in the improvements as a term of their settlement of the contested § 303(f) motion. But that settlement was never reached, and in fact Jenkins and Hood announced at the October 28, 1998 hearing that they were withdrawing their motion to compel settlement. Moreover, even if the settlement agree-

ment was enforceable, to the extent that the agreement included an express waiver of the Hodeses' homestead exemption, such a waiver by executory contract would be unenforceable as contrary to public policy.[7]

■ Secondly, Jenkins and Hood contend that the Hodeses lost their claim of exemption by virtue of fraudulent conduct. The Court cannot determine from the record before it whether the Hodeses committed fraud. In fact, this is a highly disputed issue that cannot be resolved by reading the deposition transcripts relied upon by Jenkins and Hood. The mere fact that these debtors used nonexempt assets to fund a $250,000 addition to a $545,000 home is not prima facie evidence of fraud. The Kansas exemption statutes place no value limitation on the homestead or on improvements to the homestead.

■ Jenkins and Hood's most compelling argument is that the Hodeses are not entitled to exempt the cost or value of improvements made to the homestead after the involuntary petitions were filed. The general rule is that exemptions are determined as of the date of the filing of the bankruptcy petition.[8] Indeed, § 522(b)(2)(A)[9] states that the debtor may claim as exempt:

> any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debt-

---

3. Kansas has opted out of the federal exemption package, 11 U.S.C. § 522(d), such that the only exemptions available to the debtors are those available under Kansas law. Furthermore, the validity and extent of such exemptions are controlled by state law.

4. Kan. Const., art. 15, § 9.

5. *In re Estate of Dittemore*, 152 Kan. 574, 576, 106 P.2d 1056 (1940).

6. *Anderson v. Shannon*, 146 Kan. 704, 711, 73 P.2d 5 (1937) (citation omitted).

7. *Celco, Inc. of America v. Davis Van Lines, Inc.*, 226 Kan. 366, 369–70, 598 P.2d 188 (1979).

8. *Mansell v. Carroll*, 379 F.2d 682, 684 (10th Cir.1967); *In re Johnson*, 19 B.R. 371, 374 (Bankr.D.Kan.1982).

9. Section 522(b) gives debtors the option of electing the federal exemptions pursuant to subsection (b)(1), or the exemptions as set forth in subsection (b)(2). Kansas has opted out of the federal exemption scheme, thereby preventing its residents from claiming the federal exemptions and forcing them to elect the exemptions set forth in § 522(b)(2).

or's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180-day period than in any other place.

Courts have been uniform in deciding that debtors' rights to exemptions are determined by the law in existence on the date that the bankruptcy petition was filed. That is the applicable law for purposes of § 522(b). For example, in *Marcus v. Zeman*,[10] the Tenth Circuit Court of Appeals held that the law in effect on the date of filing of the original Chapter 13 petition controlled what exemptions were available to the debtor, rather than the date of conversion to Chapter 7, and distinguished the holding in *Armstrong v. Lindberg*,[11] that the date of conversion controls. The Tenth Circuit observed:

> The *Lindberg* court was not required to address the consequences of a change in the law between filing and conversion. Where, as here, the law, rather than the facts, has changed, the plain language of the statutes dictate the result..... We hold that the law in effect on the date of filing controls what exemptions will be available to a debtor converting from Chapter 13 to Chapter 7.[12]

The Tenth Circuit implicitly recognized a distinction between cases where the applicable law has changed and where the facts have changed after the petition date.

In this case, the exemption laws did not change after the bankruptcy petitions were filed, but the Hodeses' property changed after the petitions were filed. At the time the involuntary petitions were filed, the Hodeses' home was not under construction and the builder was holding a $250,000 cash deposit. At the time of the orders for relief, the construction was underway and the builder had drawn down some of the $250,000.

■ This is a scenario that could not happen in a voluntary Chapter 7 case, where the debtor loses authority to use, acquire or dispose of property. The trustee has the authority, not the debtor. But in an involuntary case, in the gap period between the petition filing and order for relief, § 303(f) gives the debtor the right to use, acquire and dispose of property, absent a court order to the contrary. In effect, the debtor has the power to dispose of nonexempt property and to acquire exempt property, unless the court orders otherwise. For example, in *First Beverly Bank v. Adeeb (In re Adeeb)*,[13] the court refused to deny the debtor's discharge solely on the basis that the debtor had not recovered property he transferred in the year preceding the filing of an involuntary petition, agreeing with the analysis in *Andreotti*,[14] that it would be inequitable to not allow the involuntary debtor time to engage in prebankruptcy planning like a voluntary debtor. Because of the powers vested in an involuntary debtor during the gap period, a number of courts have held that for purposes of determining what property is subject to exemption, the proper date for determination is as of the order for relief, not as of the petition date.

In *In re Andreotti*,[15] the court held that in an involuntary bankruptcy case, "the line of cleavage" which establishes whether an asset is exempt or nonexempt is the date of the order for relief, not the date that the petition was filed.[16] The *Andreot-*

**10.** 1 F.3d 1050, 1051 (10th Cir.1993)

**11.** 735 F.2d 1087, 1088 (8th Cir.1984), *cert. denied,* 469 U.S. 1073, 105 S.Ct. 566, 83 L.Ed.2d 507 (1984).

**12.** *Marcus,* 1 F.3d at 1052 (citation omitted).

**13.** 787 F.2d 1339, 1346 (9th Cir.1986) (reversing denial of discharge and remanding for determination of whether debtor had recovered property he transferred by the time the

petition was filed or within a reasonable time thereafter).

**14.** 16 B.R. 28, 31 (Bankr.E.D.Cal.1981).

**15.** *Id.* at 30–31.

**16.** *Accord, In re Wilson,* 62 B.R. 43, 46 (E.D.Tenn.1985).

*ti* court reasoned that the rights of parties do not become fixed and the debtor's property does not pass out of his hands into the bankruptcy estate until the order for relief, because in the interim between the filing of the involuntary petition and the entry of the order for relief, the debtor may use, acquire or dispose of property as if the involuntary case had not been filed.[17] The court further noted that it would be inequitable to allow the voluntary debtor to engage in prebankruptcy planning of exemptions, but to deny the same opportunity to a debtor against whom an involuntary petition is filed.[18] Section 303(f) affords the involuntary debtor a period of time to engage in this type of activity. The court distinguished cases frequently cited for the proposition that exemptions are fixed as of the date the petition is filed. For example, *White v. Stump,*[19] was a case decided under the Bankruptcy Act, which did not have a provision like § 303(f). The court also distinguished the *White* case and the *Matter of Blue*[20] case, among others, that involved voluntary petitions.

In *In re Peacock,*[21] the court held that the filing of the involuntary petition determined the applicable state exemption law, such that the debtor could not take advantage of a favorable amendment to the state exemption law that became effective after the involuntary petition was filed. The court reasoned that § 522(b)(2)(A) by its plain language fixed the filing date as determinative of the available exemptions to both voluntary and involuntary debtors. But the *Peacock* court distinguished the *Andreotti* and *Wilson* cases because those cases involved changes in the debtor's property, not changes in the exemption laws during the gap period between the

filing of the involuntary petition and entry of the order for relief.[22] The *Peacock* court observed that there is a material distinction: whether or not the petition is voluntary or involuntary, the applicable exemption law is the law in existence on the date of the filing of the petition; but § 303(f) allows the debtor to change his or her assets during this period, suggesting that what property is subject to analysis under § 522(b)(2)(A) may not be determinable until the order for relief.[23] This Court agrees that where involuntary debtors exercise their rights under § 303(f) during the gap period and commence improvements to their homestead, they are entitled to claim as exempt the improvements commenced during the gap period.

In this case, the builder continued to make improvements even after the entry of the orders for relief. Jenkins and Hood argue that even if the cost of improvements made before the orders for relief is exempt, the cost of improvements made after the entry of the orders for relief is not exempt, because the monies on deposit with the builder were nonexempt funds, not actual improvements. But Jenkins and Hood did not fully prosecute their § 303(f) motion or their motion to compel settlement of the § 303(f) motion; nor did they or the trustee file any motion or action to recover the funds on deposit with the builder. Thus, construction continued after the entry of the orders for relief.

■ Whether funds deposited with a builder for home improvements is exempt property, is an issue of first impression. But, the Kansas Supreme Court addressed a similar issue in *Kessler v. Frost.*[24] In *Kessler,* the defendants borrowed money

---

**17.** *Andreotti,* 16 B.R. at 30–31; *see* 11 U.S.C. § 303(f).

**18.** *Andreotti,* 16 B.R. at 31.

**19.** 266 U.S. 310, 45 S.Ct. 103, 69 L.Ed. 301 (1924) (stating that the "line of cleavage" is on the petition date).

**20.** 5 B.R. 723 (Bankr.S.D.Ohio 1980).

**21.** 119 B.R. 605, 607–608 (Bankr.N.D.Ill. 1990).

**22.** *Id.* at 609.

**23.** *Id.*

**24.** 103 Kan. 711, 175 P. 967 (1918).

secured by a mortgage on their homestead, and deposited the loan funds into their bank account. They intended to use the funds to pay off a debt incurred for the erection of improvements to their homestead. The court held that these funds were exempt because they were intended to pay for improvements.[25] Moreover, in Kansas, proceeds of a homestead that will be used to acquire a new homestead are exempt.[26] These cases evidence a strong public policy in Kansas of protecting the homestead, as well as improvements to the homestead, whether construction is completed or in progress. A debtor with a new house under construction at the time of the petition or the order for relief would be entitled to claim the house exempt, without any partition of the value of the unfinished construction at the time of the petition or order for relief.[27] This Court sees no reason why improvements to an existing house should be treated any differently.

**IT IS THEREFORE ORDERED BY THE COURT** that the objection to the debtors' homestead exemption filed by Lawrence S. Jenkins and Roger W. Hood, M.D., shall be DENIED.

This Memorandum shall constitute findings of fact and conclusions of law under Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure. A judgment based on this ruling will be entered on a separate document as required by Rule 9021 of the Federal Rules of Bankruptcy Procedure and Rule 58 of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

25. *Id.* at 712–13, 175 P. 967.

26. *First National Bank v. Dempsey,* 135 Kan. 608, 609, 11 P.2d 735 (1932); *International Harvester Credit Corp. v. Ross,* 217 Kan. 683, 687, 538 P.2d 655 (1975) (noting that the Kansas Supreme Court has held that where a debtor intends to invest money received from the sale of a homestead in another homestead

### JUDGMENT ON DECISION DENYING OBJECTION TO EXEMPTION

Judgment Creditors, Lawrence S. Jenkins and Roger W. Hood, M.D., filed an objection to the debtors', Phillip Hodes and Barbara Hodes, claimed homestead exemption. The Honorable Julie A. Robinson, presiding. The Court took the matter under advisement, and a decision having been rendered,

**IT IS THEREFORE ORDERED BY THE COURT** that the objection to the debtors' homestead exemption filed by Lawrence S. Jenkins and Roger W. Hood, M.D. shall be DENIED.

IT IS SO ORDERED.

and has not abandoned that intention, the money is exempt).

27. Generally, in a voluntary case, the measuring date would be the date of the petition; and in an involuntary case, it would be the date of the entry of the order for relief.