**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 25 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

In re: BARBARA E. HODES and
PHILLIP HODES,

        Debtors.

------------------------

LAWRENCE S. JENKINS; ROGER
W. HOOD, MD; and ERIC C.
RAJALA, Trustee,

        Appellant,

v.

BARBARA E. HODES and PHILLIP
HODES,

        Appellees.

No. 03-3309

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(Bankruptcy Court Nos. 98-20039-7-I-JAR & 98-20040-7-I-JAR)**
**(District Court Nos. 99-2293-GTV & 99-2294-GTV)**

---

Mark S. Carder of Stinson, Morrison, Hecker, LLP, Kansas City, Missouri,
(Michael L. Kahn of Stinson, Morrison, Hecker, LLP, Kansas City, Missouri, with
him on the briefs) for Appellants Lawrence S. Jenkins and Roger W. Hood, M.D.

Eric C. Rajala of the Law Office of Eric C. Rajala, Overland Park, Kansas, on the
brief for Appellant Eric C. Rajala, Trustee.

Cynthia F. Grimes of Grimes and Rebein, L.C., Lenexa, Kansas for Appellees Barbara E. Hodes and Phillip Hodes.

---

Before **KELLY**, **HENRY**, and **HARTZ**, Circuit Judges.

---

**HENRY**, Circuit Judge.

---

This appeal raises the novel issue of whether and to what extent debtors in an involuntary bankruptcy may claim under the Kansas homestead exemption a contractually-binding deposit with a builder for improvements to an already existing homestead. The bankruptcy court overruled creditors' objections to the exemption, and the district court affirmed the bankruptcy court. Exercising jurisdiction pursuant to 28 U.S.C. § 158 (a) and (d), we affirm the district court.

## I.    STANDARD OF REVIEW

In reviewing a bankruptcy court decision under 28 U.S.C. § 158(a) and (d), the district court and the court of appeals apply the same standards of review that govern appellate review in other cases. *McKowen v. I.R.S.*, 370 F.3d 1023, 1025 (10th Cir. 2004) (quotation omitted). We therefore review the bankruptcy court's legal determinations de novo and its factual findings for clear error. *In re Country World Casinos, Inc.*, 181 F.3d 1146, 1149 (10th Cir. 1999) (quotation omitted).

## II. BACKGROUND

The parties do not dispute the bankruptcy court's findings of fact. In 1993, Lawrence Jenkins and Roger Hood commenced a civil action against Phillip and Barbara Hodes seeking damages from a breach of a contract concerning the Hodeses' sale of their interest in certain corporate stock to Mr. Jenkins and Mr. Hood. On November 10, 1997, a jury returned a verdict against the Hodeses and other codefendants and in favor of Mr. Jenkins and Mr. Hood for $4 million. On November 17, 1997, the court entered a judgment in accordance with the verdict.

Soon thereafter, the Hodeses began liquidating approximately $514,000 in nonexempt securities and acquiring exempt assets with the funds. The Hodeses used part of this money to prepay a home builder for an addition to their home in Leawood, Kansas. There is no allegation that any of the funds paid to the builder were fraudulently obtained. The Hodeses contend that they began discussions with the builder in the summer of 1997, when they decided to enlarge their home in anticipation of the birth of their daughter's twins. The twins were not going to live with them, but the Hodeses wanted more space so they could babysit the twins. On December 7, 1997, the Hodeses entered into a contract with the builder and gave him a $225,000 cash deposit.[1] The contract estimated that the addition

[1] Although the bankruptcy court opinion states that the total deposit was $250,000, the district court opinion and both parties' briefs indicate that the
(continued...)

-3-

would cost $190,000 plus the builder's 15% fee, but no more than a total of $225,000. The contract called for a 1,056 square-foot addition to the Hodeses' 3,700 square-foot home. The addition included an office, an enlarged family room, and modifications to the master bedroom. The Hodeses purchased this home in 1989 for $545,000.

On January 6, 1998, Mr. Jenkins and Mr. Hood filed involuntary Chapter 7 bankruptcy petitions against Mr. and Mrs. Hodes. As of January 6, the builder had not commenced construction of the addition and was in possession of the $225,000 deposit.

The construction commenced sometime after January 6. On February 23, 1998, Mr. Jenkins and Mr. Hood filed a motion under 11 U.S.C. § 303(f) to stop the construction and to restrict the Hodeses' use of the deposited funds prior to entry of the orders for relief. Under that section, the court may prevent a debtor from controlling an asset during the "gap period" between the filing of the involuntary petition and the entry of an order for relief. *See* 11 U.S.C. § 303(f) ("[E]xcept to the extent that the court orders otherwise, and until an order for relief in the case, any business of the debtor may continue to operate, and the

---

[1](...continued)
deposit was for $225,000. *See In re Hodes*, 287 B.R. 561, 564-565 (D. Kan. 2002); *In re Hodes*, 235 B.R. 104, 106 (Bankr. D. Kan. 1996); Aplts' Br. at 6; Aples' Br. at 3. For purposes of this opinion, we will use the $225,000 amount.

debtor may continue to use, acquire, or dispose of property as if an involuntary case concerning the debtor had not been commenced.").

The parties attempted to resolve this contested § 303(f) motion and on March 2, 1998, recited the terms of their settlement to the bankruptcy court. The settlement included the Hodeses' agreement to obtain a mortgage on their home and to use these borrowed funds to pay $290,000 to Mr. Jenkins and Mr. Hood. Later, the Hodeses failed to pay the $290,000, and Mr. Jenkins and Mr. Hood filed a motion to compel settlement. The courtroom minute sheet from a hearing on October 28, 1998, states that Mr. Jenkins and Mr. Hood agreed to withdraw this motion to compel; however, there is no journal entry withdrawing the motion and the parties did not refer to this motion to compel in their submissions on the exemption issue.

In the meantime, construction of the home addition proceeded. On April 16, 1998, the Hodeses consented to the entry of orders for relief in their cases. At the time of the entry of the orders for relief, the builder had expended $8,966.67 of the deposit. As of October 28, 1998, the date on which Mr. Jenkins and Mr. Hood filed a Supplemental Brief in Support of Objection to Exemptions, the builder had expended a total of $164,837.24.

### III. APPLICABLE LAW AND BURDEN OF PROOF

When determining the validity of a claimed state law exemption, bankruptcy courts look to applicable state law. *In re Lampe*, 331 F.3d 750, 754 (10th Cir. 2003) (quotation marks omitted). Because Kansas has opted out of the federal bankruptcy exemption scheme, the Hodeses may only claim exemptions available under Kansas law. *See id*; *In re Douglas*, 59 B.R. 836, 838 (Bankr. D. Kan. 1986) ("Kansas has opted out of the federal exemption scheme thus limiting the debtor to exemptions available under Kansas law."); *see also* 11 U.S.C. § 522(b)(1); KAN. STAT. ANN. § 60-2312 (1994).

Kansas' homestead exemption originally derived from the state Constitution and has subsequently been codified by statute:

> A homestead to the extent of . . . one acre within the limits of an incorporated town or city, occupied as a residence by the family of the owner, together with all the improvements on the same, shall be exempted from forced sale under any process of law . . . .

KAN. CONST. art. 15, §9; KAN. STAT. ANN. § 60-2301 (1994). Unlike the vast majority of states, which impose a dollar limit on debtors' homestead exemptions, Kansas' homestead exemption is unlimited; bankrupt Kansas homeowners may protect the full value of their homes.

"Homestead" generally signifies a dwelling house with customary appurtenances and includes outbuildings that are necessary for use where the family resides. *Dickens v. Snellings*, 10 B.R. 949, 951 (Bankr. W.D. Va. 1981).

The exemption "is an interest of the debtor carved out of the bankruptcy estate for the benefit of the debtor and thereby shielded from creditors' claims." *Holloway v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 1062, 1063 (11th Cir. 1996). The exemption provides a debtor with an asset he or she can remove from the prebankruptcy estate to aid in postbankruptcy rehabilitation. Wells M. Engledow, *Cleaning up the Pigsty: Approaching a Consensus on Exemption Laws*, 74 AM. BANKR. L.J. 275, 276 (2000).

The objecting party bears the burden of proof on an objection to a claimed exemption. FED. R. BANKR. P. 4003(c); *In re Coleman*, 209 B.R. 739, 741 (Bankr. D. Colo. 1997). Mr. Jenkins and Mr. Hood must therefore prove by a preponderance of the evidence that the exemption was improper. *See In re Sims*, 241 B.R. 467 (Bankr. N.D. Okla. 1999).

## IV.    UNDERLYING DECISIONS IN THIS CASE

1.    *The Bankruptcy Court Decision Allowing the Exemption*

The bankruptcy court denied Mr. Jenkins' and Mr. Hood's objections to the Hodeses' homestead exemption, permitting the Hodeses to claim as exempt all $225,000 of their deposit with the builder. *See In re Hodes*, 235 B.R. 104 (Bankr. D. Kan. 1996). The bankruptcy court analyzed the confluence of 11 U.S.C. §§ 522 and 303(f), and determined, in accordance with the bulk of authority, that the

controlling date for purposes of determining exempt assets in an involuntary bankruptcy is not the date on which the involuntary petition is filed, but the date on which the order for relief is entered. *See id.* at 108.

The bankruptcy court found persuasive the rationale allowing involuntary debtors to convert non-exempt assets into exempt assets during the "gap period" between the petition date and the order date because doing so puts involuntary debtors on a level playing field with voluntary debtors who can convert assets prior to filing their own voluntary petitions. *See id.* at 108-09. For that reason, and because construction had already commenced, the nearly $9,000 expended by the builder during the "gap period" between the petition date and the order date was exempt. *See id.* at 109-110. Citing the strong public policy in Kansas of protecting the homestead as well as improvements to it, the bankruptcy court confirmed that a new house under construction on the petition or order date would be exempt, "without any partition of the value of the unfinished construction at the time of the petition or order for relief." *Id.* at 110.

The bankruptcy court also found no reason to draw a distinction between construction of a new home and construction of improvements made to an existing home. It therefore allowed the Hodeses to "bootstrap" the remaining nearly $216,000 of the deposit onto the exempt $9,000 and thereby claim all $225,000 of the deposit as its homestead exemption. *See id.* The court noted that

Mr. Jenkins and Mr. Hood had an opportunity to freeze the assets by properly prosecuting a § 303(f) motion, but failed to do so. *See id.* at 109.

2. *The District Court Decision Allowing the Exemption*

The district court affirmed the bankruptcy court for similar reasons. *In re Hodes*, 287 B.R. 561 (D. Kan. 2002). It concurred that the order date, rather than the petition date, controls the moment at which exemptions are determined, and the court applied to the improvements the Kansas rule that a homestead need not be complete to be exempt. *See id.* at 568. The district court again noted that Mr. Jenkins and Mr. Hood never fully prosecuted a motion under § 303(f) and that construction had continued even after the order date. *Id.* Concluding that the Hodeses were entitled to claim under the homestead exemption "whatever amount of the $225,000 was ultimately expended on the addition to their home," *id.*, the district court noted that the source of the converted funds is irrelevant because "the right to convert non-exempt assets into exempt assets is well-settled in Kansas." *Id.* (citations omitted).

## V. ANALYSIS

We are free to affirm the decision of the district court on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not

relied upon by the district court. *See Lambertsen v. Utah Dep't of Corr.*, 79 F.3d 1024, 1029 (10th Cir. 1996). We therefore affirm on grounds different than those argued in either the bankruptcy or district court or before this court at oral argument, because the record supports the Hodeses' homestead exemption claim under a theory of equitable conversion.

Equitable conversion is neither a fixed rule of law nor a remedy, but rather is a legal fiction devised in recognition of the maxim that equity regards as done that which ought to be done. *See* 1 Dan B. Dobbs, *Law of Remedies: Damages, Equity, Restitution* § 4.3(8) (2d ed. 1993); 18 C.J.S. *Conversion* § 3 (1990). Equitable conversion "refers only to a way of thinking about certain issues, a reasoning process . . . ." Dobbs, *Law of Remedies* § 4.3(8). Such an interpretation of the doctrine is helpful in this case, because the facts fall slightly outside the typical case in which the doctrine is invoked. In the standard case, courts apply equitable conversion when parties enter into a sales contract for a piece of land:

> money directed to be employed in the purchase of land, or land directed to be sold and turned into money, is to be considered as that species of property into which it is directed to be converted, regardless of the manner in which the direction is given. Whether money is actually deposited or is only covenanted to be paid, or whether the land is actually conveyed or only to be conveyed, the owner of the fund or property, or the contracting parties, may make the land money or the money land.

27A AM. JUR. 2D *Equitable Conversion* §11 (1996). Thus, realty and personalty

are converted into one another at the moment a sales contract is entered into.

> [W]hen parties enter into a sales contract that is subject to specific performance . . . the equity courts [] say that the buyer [is] a kind of equitable owner of the property and the seller [is] the equitable owner of the money. This is the "conversion"–the seller now equitably owns money and the buyer now equitably owns land. The dramatic form of the statement is that the realty is converted to personalty and vice versa.

Dobbs, *Law of Remedies* § 4.3(8). Kansas courts have often applied the doctrine. *See, e.g.*, *Matter of Estate of Hills*, 564 P.2d 462, 468-69 (Kan. 1977) (discussing general rule of equitable conversion in context of land sales contract, noting the doctrine involves a change in the character of property so that realty is considered personalty and personalty is considered realty); *Frisbie v. Director of Taxation*, 566 P.2d 29, 32 (Kan. Ct. App. 1977) (finding contract for sale of real estate worked equitable conversion of land into personalty for tax purposes). Generally, the real estate contract transfers the seller's interest in the real estate to the buyer when the contract is made, rather than after all the installment payments are made. The interest retained by the seller is personal property for such purposes as inheritance taxes. *See id.*

In this case, however, the subject of the sales contract is not a piece of land; it is an addition to an already-existing homestead. Nevertheless, Kansas law is long-settled that "real estate includes not only the land itself, but also all buildings, fixtures, and improvements, and rights and privileges appurtenant thereto." *Wyandotte County Gas Co. v. Spaeth*, 109 P. 785, 786 (Kan. 1910).

Indeed, that principle has become a cornerstone of Kansas real estate definitions. *See* KAN. STAT. ANN. § 77-201 (1997 & Supp. 2003) ("'Land,' 'real estate' and 'real property' include lands, tenements and hereditaments, and all rights to them and interest in them, equitable as well as legal."); KAN. STAT. ANN. § 79-102 (1997) (distinguishing for tax purposes between real property, which includes "not only the land itself, but all buildings, fixtures, [and] improvements," and personal property, which includes "every tangible thing . . . not forming part or parcel of real property").

Applying the doctrine of equitable conversion to this case, it is clear that the Hodeses' homestead exemption is proper to the extent the deposit is actually spent on improvements to the homestead. When they entered into an enforceable and binding sales contract with the builder for the addition, the Hodeses promised to pay $225,000 in exchange for specific enhancements to their homestead. At the moment they entered into that enforceable contract, the deposit was equitably converted into the addition, and the builder's consideration–the construction itself–was equitably converted into $225,000. That the builder had not yet hammered a nail or installed a sheet of drywall is irrelevant, because the essential principle of equitable conversion is forward-looking:

> [t]he equitable conversion doctrine . . . is anticipatory; it gets a jump on reality by imagining the conversion . . . in advance. The seller is obliged in equity to convey [the realty at issue] in exchange for the price, so he will be treated as if he already had.

-12-

Dobbs, *Law of Remedies* § 4.3(8). Whether the construction contract was specifically enforceable is immaterial in this context, because we apply the doctrine of equitable conversion only to the extent improvements are made.

This case presents a matter of first impression. Although we have found no case in which a court has applied equitable conversion to a deposit with a builder, we are comfortable doing so because "the equitable conversion doctrine is not actually limited to sales contracts cases. It may be invoked in any case in which a party is under a legal duty to convey." Dobbs, *Law of Remedies* § 4.3(8). Moreover, courts have applied the doctrine in situations other than pure land-for-money contracts. *See, e.g.*, *United States v. Big Value Supermarkets*, Inc., 898 F.2d 493, 497 (6th Cir. 1990) (using equitable conversion principle to extend a tax lien); *Matter of McGee's Estate*, 383 N.E.2d 1012, 1015 (Ill. App. Ct. 1978) (applying doctrine to treat as realty the insurance proceeds arising from the destruction of a dwelling).

Because equitable conversion occurred when the Hodeses entered into the contract with the builder, we need not determine whether the petition date (January 6, 1998) or the order date (April 16, 1998) controls for purposes of the exemption. The contract date (December 7, 1997) preceded both. The $225,000 addition was part of the homestead as soon as the Hodeses executed the contract with the builder, so the deposit securing the addition is exempt to the extent it is

used to improve the homestead.  At the risk of stating the obvious, we wish to make it clear that the Hodeses may not claim as exempt any part of the deposit that is not actually spent on improvements to the homestead; on this necessary limitation to the exemption we agree with the bankruptcy and district courts.  *See In re Hodes*, 287 B.R. at 567-68 (agreeing with the bankruptcy court that "[g]iven that construction had already commenced, . . . [the Hodeses] were entitled to claim as exempt any *improvements* made before the order for relief was entered, as well as any *improvements that were made from the deposit* after the order was entered. . . . [T]he court believes that [the Hodeses] are entitled to claim as an exemption *whatever amount of the $225,000 was ultimately expended on the addition to their home*.") (emphases supplied).

Read without the proper limitation, our analysis could create perverse incentives.  For example, wealthy Kansas debtors could sell all their non-exempt assets prior to bankruptcy and put down deposits with builders for extravagant additions to their homesteads in anticipation of claiming the deposits as exempt. Even worse, a fraudulent-minded debtor could conceivably put such a deposit down with a builder to fall under the rule we announce here while secretly conspiring with the builder to cancel the contract after the bankruptcy, thereby evading creditors without ever actually making improvements to the homestead.

These concerns are ameliorated by the narrowness of our holding.  We hold

only the following: if a Kansas debtor enters into a valid, enforceable contract with a builder for improvements to an exempt homestead, prior to an involuntary petition being filed against the debtor, and the debtor puts down a deposit with the builder before the petition is filed, the deposit is equitably converted into construction at the moment the contract is executed and the not-yet-complete construction is equitably converted into an exempt asset. For that reason, the deposit is part and parcel of the homestead and is exempt to the extent that the debtor actually uses it to improve the homestead.

If this rule reinforces inequities between debtors in Kansas and debtors in other states, such inequities are the wages of Kansas' unlimited homestead exemption. The ability of Kansas debtors to put down deposits prior to involuntary petitions being filed against them is consistent with Kansas' legislative choice to enact an unlimited and debtor-friendly bankruptcy exemption scheme. Kansas legislators may one day see fit to place a cap on the amount of money a debtor can claim under the Kansas homestead exemption; likewise, if Congress wishes to enforce a federal bankruptcy homestead exemption cap, it presumably may do so. *See* H.R. REP. NO. 108-40, pt.1, at 597 (2003) ("If Congress is serious about curbing abuse, a national, absolute dollar amount cap, without any loopholes, is the only way to do it."). But until either of those elected bodies decides to change the law, Kansas will continue to be a "debtors'

paradise." *Id.* at 596 ("This is a national problem that demands a uniform solution. Without a nationwide cap, debtors who live in the 45 states that cap the exemption at $200,000 or less are free to relocate to one of the five so-called 'debtors' paradises' that have no cap at all." (quoting David Wessel, *A Law's Muddled Course*, WALL ST. J., Feb. 22, 2001, at 1)).

As to concerns about sham contracts between debtors and builders, we are careful to note that we have no doubt here about the parties' intentions to perform according to the terms of contract. Clear and uncontroverted evidence shows that the builder was drawing down funds from the deposit for the purpose of improving the homestead, rather than acting merely as a shelter for the assets. The builder spent nearly $9,000 of the deposit during the "gap period," and nearly $165,000 by October 28, the date on which Mr. Jenkins and Mr. Hood filed a Supplemental Brief in Support of Objection to Exemptions. We would be far less confident of our result were there some indication that the contract at issue were a sham, that the builder and the debtor were in cahoots, or that for some other reason the deposit was never actually intended to be used for improvements to the homestead. In such a case, a court would be justified in refusing to characterize the assets as equitably converted at the moment of the contract's execution, because the contract would be invalid from the start. Equitable conversion only has meaning if the contract between the debtor and the builder is valid in the first

place. If the agreement between the debtor and the builder is fraudulent and the deposit is never spent on the homestead, the debtor may not claim it as exempt.

The fact that the builder had not *completed* construction by October 28, 1998, is not fatal to the Hodeses' claim. As the district court noted, "Kansas courts have held that the purchase of a homestead with a view to occupancy followed by occupancy within a reasonable time is sufficient to merit a homestead exemption *even if the homestead itself is not completed.*" *In re Hodes*, 287 B.R. at 568 (emphasis supplied) (citing *Gilworth v. Cody*, 21 Kan. 702, 705-06 (1879) (quoting *Edwards v. Fry*, 9 Kan. 417, 425 (1872) ("Repairs may have to be made, or buildings partially or wholly erected. Now the law does not wait till all this has been done, and the purchaser actually settled in his new home, before attaching to it the inviolability of a homestead. A purchase of a homestead with a view to occupancy followed by occupancy within a reasonable time, may secure *ab initio* a homestead inviolability."))).

Thus, although neither the bankruptcy court nor the district court applied the equitable conversion doctrine per se, both used its forward-looking rationale in determining that there is no principled reason to treat ongoing and completed construction differently for purposes of the homestead exemption:

> [there exists] a strong public policy in Kansas of protecting the homestead, as well as improvements to the homestead, whether construction is completed or in progress. A debtor with a new house under construction at the time of the petition or the order for relief would be entitled to claim the

house exempt, without any partition of the value of the unfinished construction at the time of the petition or order for relief.

*In re Hodes*, 235 B.R. at 110; *see In re Hodes*, 287 B.R. at 568 ("Like the bankruptcy court, this court sees no legitimate reason why this rule should not apply with equal force to improvements to homesteads."). We agree.

## VI. CONCLUSION

Applying the doctrine of equitable conversion, we conclude that a Kansas debtor who enters into a valid contract with a builder prior to the filing of an involuntary bankruptcy petition against the debtor, secured by a deposit placed with the builder prior to the petition being filed, may claim under the Kansas homestead exemption any amount of the deposit actually spent on improvements to the homestead. For the foregoing reasons, we AFFIRM the decision of the district court.