**In re John ANDREOTTI, Debtor.**

**Bankruptcy No. 281–00584–D.**

United States Bankruptcy Court,
E. D. California.

Oct. 23, 1981.

David Russell, Carol D. Mills, Russell, Jarvis, Estabrook & Dashiell, Sacramento, Cal., for trustee.

John D. Bessey, Carole B. Hogan, Hefner, Stark & Marois, Sacramento, Cal., for debtor.

## MEMORANDUM OPINION AND DECISION

LOREN S. DAHL, Bankruptcy Judge.

### Statement of Facts

On February 17, 1981, Peter Hobbs, a creditor, filed an involuntary petition in bankruptcy under Chapter 7 of the Bankruptcy Reform Act of 1978 against John Andreotti, the corporate president of a now defunct cabinet making business.

Thereafter, during the week of February 23, 1981, the debtor, Andreotti, deposited One Thousand Dollars ($1,000) into a savings and loan account, One Thousand Five Hundred Dollars ($1,500) into a credit union account standing in the name of a third party and he moved his place of residence to his 42' trawler boat.

On March 18, 1981, after a formal hearing, this Court ordered that relief be granted. The debtor filed schedules April 9, 1981 and claimed as exempt assets under applicable state law, the savings and loan account, the credit union account and the trawler boat. He also scheduled and claimed as exempt assets certain undescribed tools of the trade and household furnishings.

The trustee in bankruptcy objected to these exemptions. The primary ground for these objections with respect to the savings and loan account, the credit union account and the trawler boat, was that at the time the involuntary petition was filed (February 17, 1981), the debtor had not qualified for these exemptions because the deposits had not been made and he was not living on the trawler boat. The debtor, on the other hand, asserts that even if he had not qualified for these exemptions at the time of the filing of the involuntary petition, he had qualified for these exemptions on the date that relief was ordered (March 18, 1981).

Thus, the primary issue before this Court is whether the "line of cleavage" which establishes the exempt or nonexempt character of the assets should be drawn at the date that the involuntary petition was filed or whether it should be drawn at the date that relief was ordered or at some other time.

### Analysis

#### The 42' Trawler Boat and Savings and Loan Account

The trustee properly asserts that under Section 541 of the Code, upon the filing of the involuntary petition all property of the debtor became property of the estate. He further correctly asserts that under Section 303 of the Code, the involuntary case was commenced on the date that the involuntary petition was filed. The trustee then asserts that a reading of the two Code sections together requires a conclusion that the exempt or nonexempt character of the assets was established on the date that the case was commenced, i.e., when the petition was filed on February 17, 1981.

In support of this last proposition, the trustee cites the 1924 U. S. Supreme Court case, *White v. Stump*, 266 U.S. 310, 45 S.Ct. 103, 69 L.Ed. 301 and the 1980 Bankruptcy Court case from the S.D. of Ohio; *Matter of Blue*, Bkrtcy. 5 B.R. 723. Both cases were commenced by voluntary petitions. The *Blue* case held that *White* still controls under the Code. The Supreme Court in *White* stated at page 313, "the [Bankruptcy] law discloses a purpose to fix the line of cleavage with special regard to the conditions existing when the petition was filed".

To corroborate this point, the trustee cites *Collier on Bankruptcy*, 14th ed., 6.07, where it is stated that "Under the accepted rule a bankrupt cannot claim an exemption which has not been established in accordance with the requirements of state law at the time of the filing of the petition, whether the petition be voluntary or involuntary". However, this statement refers to petitions filed under the Bankruptcy Act.

Both the holding in the *White* case and *Colliers* 14th ed. interpretation of the *White* case are derived from the rationale set forth in the *White* case. The Supreme Court stated at page 313, "When the law speaks of property that is exempt and of rights to exemptions it of course refers to some point of time. In our opinion *this point of time is the one at which the general estate passes out of the bankrupt's control, and with respect to which the status and rights of the bankrupt, the creditors and the trustee in other particulars are fixed*". (emphasis added)

Bankruptcy Code Section 303 entitled "Involuntary Cases" makes significant change in the relationships of the parties upon the filing of an involuntary petition as distinguished from the Bankruptcy Act. Specifically, Section 303(f) provides, "... except to the extent that the court orders otherwise, and until an order for relief in the case, any business of the debtor may continue to operate, and the debtor may continue to use, acquire, or dispose of property *as if an involuntary case concerning the debtor had not been commenced*". (emphasis added)

■ Because of the significant change in bankruptcy law worked by Section 303(f) of the Code, the rights of the parties do not become fixed and the general estate of the debtor does not pass out of his hands at the time that the involuntary petition is filed. Rather, this phenomenon occurs at the time of the order for relief if such an order is granted. Thus, following the rationale of *White*, the line of cleavage cannot be drawn until the date of the order for relief because it is at this time that the estate passes out of the debtor's control and the rights of the parties become fixed.

■ This conclusion is further supported by the fact that the Bankruptcy Court sits as a court of equity. It would be inequitable for this Court to allow the voluntary debtor to plan out his exemptions well in advance of the date that he volitionally files his petition and yet to deny the involuntary debtor any such opportunity to plan his exemptions. Also, the conclusion reached on this issue is strongly supported by the policy inherent in the Code to provide both the voluntary and involuntary debtor with a "fresh start". Accordingly, the debtor qualified for the claims of exemption on the 42' trawler boat and the Savings and Loan account prior to the date of the order of relief.

However, the trustee contends that the exemption of the trawler boat is limited to the amount available under California C.C.P. 690.3 to a non-head of family prior to January 1, 1981. From January 1, 1979 to January 1, 1981, C.C.P. 690.3 provided for an exemption of a waterborne vessel in which the debtor or his family actually resides to the extent of Forty Thousand Dollars ($40,000) in actual cash value over and above liens and encumbrances to any head of a family and Twenty-five Thousand Dollars ($25,000) for any other person. The exemption was increased to Forty-five Thousand Dollars ($45,000) and Thirty Thousand Dollars ($30,000) effective January 1, 1981.

The California and Ninth Circuit rule is as stated in *Towers v. Curry*, 247 F.2d 738, 740, "The exemptions specified at the time the obligation was incurred or the contract made is the controlling date". An examination of debtor's A–3 schedule filed herein under oath failed to specify any of the details required including when the claim was incurred, other than the name and address of the creditor and the amount of the claim, nor did the debtor offer any evidence thereon. However, examination of claims filed herein by creditors show numerous claims to have been incurred between January 1, 1979 and January 1, 1981. Therefore, debtor's claim of exemption is limited to

Forty Thousand Dollars ($40,000) if he qualified as head of a family or Twenty-five Thousand Dollars ($25,000) if not.

In this regard, the uncontroverted evidence is that on February 23, 1981, the debtor was living apart from his wife with whom he had a written separation agreement and that he was supporting her and three children. No legal action for divorce or legal separation had been commenced. No evidence that debtor's spouse had an existing homestead or a prior judicial determination of dwelling house exemption, was presented or suggested which would have barred debtor's claim of exemption under C.C.P. Section 690.31(b).

■ It is textbook law both in California and bankruptcy that exemptions are to be liberally construed. Constructions and interpretations which uphold the exemption should be adopted in determining the meaning of exemption statutes which are unclear, vague or ambiguous.

■ In this case, debtor was clearly head of a family before the separation agreement and his taking of a separate abode. But for the agreement and his physical absence, no other changes occurred. He was still married, still the father of their children and still supported them. The lack of legal proceedings might even suggest that the separation was temporary or for reasons other than incompatibility, absent divorce or legal separation. If physical presence at the family home were deemed to be essential to "head of a family" designation, then what of the many husbands and fathers who must be separated from their wives and children while they are in military or foreign duty service, on extended work assignments or even educational pursuits. Such a narrow construction would discriminate unduly and cannot be supported or decreed. Therefore, the debtor herein is found to be a head of a family on February 23, 1981, and his claim of exemption of his trawler boat is allowed for Forty Thousand Dollars ($40,000).

### The Credit Union Account

■ Mr. Andreotti, at the time he deposited the One Thousand Five Hundred Dollars ($1,500) into the credit union account, was not a member of that credit union. California Financial Code Section 14864 states, "The shares and certificates for funds received of members of any credit union and all accumulation on such shares and certificates are exempt". Because Mr. Andreotti was not a member of a credit union but merely deposited the funds in the name of a third party, he did not qualify for the exemption and it must be disallowed.

### The Household Furnishings

■ Mr. Andreotti has claimed an exemption for certain household furnishings under CCP 690.1. However, CCP 690.1 applies only to those items "ordinarily and reasonably necessary to, and personally used by, the debtor and his resident family." Mr. Andreotti testified that he alone moved his residence to his boat and that the boat had built-in furniture. If the Court is to believe this testimony for purposes of allowing the homestead exemption, then the debtor's furniture cannot possibly have been used "personally" by himself and he had no resident family. Thus, only the table and two chairs actually used by the debtor on his boat can qualify for the exemption and the remainder of the household furnishings claim is disallowed.

### The Tools of the Trade

■ Mr. Andreotti has claimed an exemption for certain undescribed tools of the trade under CCP 690.4. CCP 690.4 states, "Personal property ordinarily and reasonably necessary to, and personally owned and used by, the debtor exclusively in the exercise of the trade, calling or profession by which he earns his livelihood". There was no evidence that Mr. Andreotti had a trade, calling or profession which necessitates the use of these tools at the time he claimed this exemption. His testimony was that he was the president of a defunct cabinet making business. Since these tools were neither personally used by Mr. Andreotti nor was

he engaged in a trade, calling or profession in which he personally used these tools, the debtor is not entitled to this exemption.