**In re Barbara E. HODES, Phillip Hodes, Debtors.**

**Lawrence S. Jenkins, et al., Appellants,**

**v.**

**Barbara E. Hodes, et al., Appellees.**

Bankruptcy Nos. 98–20039–7–I–JAR, 98–20040–7–I–JAR.
Civil Action Nos. 99–2293–GTV, 99–2294–GTV.

United States District Court,
D. Kansas.

Dec. 20, 2002.

emption for the entire deposit should be granted even though the contractor had expended no portion of the deposit prior to the date Appellants Jenkins and Hood filed involuntary bankruptcy petitions against Appellees/Debtors and only $8,966.67 of the funds had been expended by the time the orders for relief were entered. The court exercises jurisdiction pursuant to 28 U.S.C. § 158(a)(1) and affirms.

Cynthia F. Grimes, Grimes & Rebein, L.C., Lenexa, KS, for Debtor/Appellees.

Mark S. Carder, Stinson Morrison Hecker LLP, MO, Michael L. Kahn, Central States Termo King, Inc., Kansas City, KS, Eric C. Rajala, Overland Park, KS, for Appellants.

## MEMORANDUM AND ORDER

VANBEBBER, Senior District Judge.

This Memorandum and Order addresses the bankruptcy appeals in Civil Action Numbers 99–2293–GTV and 99–2294–GTV. Appellants, Judgment Creditors Lawrence Jenkins and Roger Hood and Trustee Eric Rajala, appeal an order of the United States Bankruptcy Court denying Appellants' objection to the homestead exemption of Appellees/Debtors, Barbara and Phillip Hodes. The bankruptcy court permitted Appellees/Debtors to claim as a homestead exemption a $225,000 cash deposit paid to a building contractor for an addition to Appellees/Debtors' home.[1] The bankruptcy court determined that an ex-

## I. STANDARD OF REVIEW

In reviewing a decision of the bankruptcy court, the court accepts the bankruptcy court's findings of fact unless clearly erroneous and examines *de novo* the bankruptcy court's conclusions of law. *Robinson v. Tenantry (In re Robinson)*, 987 F.2d 665, 667 (10th Cir.1993) (citations omitted). Where, as here, the bankruptcy court's findings of fact are undisputed, the court focuses only on the legal conclusions to be drawn from the facts found. *Inland's Monthly Income Fund, L.P. v. Duckwall–ALCO Stores, Inc. (In re Duckwall–ALCO Stores, Inc.)*, 150 B.R. 965, 969 (D.Kan.1993) (citing *Jarboe v. United Bank of Denver, Colo. (In re Golf Course Builders Leasing, Inc.)*, 768 F.2d 1167, 1169 (10th Cir.1985)).

## II. FACTUAL BACKGROUND

As noted, the parties do not dispute the bankruptcy court's findings of fact. Those findings are as follows:

In 1993, Jenkins and Hood commenced a civil action against Phillip and Barbara Hodes seeking damages from a breach of a contract concerning the Hodeses'

---

1. The court notes that the bankruptcy court stated in its order that the deposit was in the amount of $250,000, as opposed to $225,000. Because all of the filings with the bankruptcy court, including Appellees/Debtors' schedule of exemptions and the actual contract be- tween Appellees/Debtors and the building contractor, indicate that the deposit was for $225,000, the court will assume that the $250,000 figure used by the bankruptcy court was an inadvertent mistake.

sale of their interest in certain corporate stock to Jenkins and Hood. On November 10, 1997, a jury returned a verdict against the Hodeses and other codefendants and in favor of Jenkins and Hood for $4 million. On November 17, 1997, the court entered a judgment in accordance with the verdict.

Soon thereafter, the Hodeses began liquidating approximately $514,000 in non-exempt securities and acquiring exempt assets with the funds. The Hodeses used part of this money to prepay a home builder for an addition to their home in Leawood, Kansas. There is no allegation that any of the funds paid to the builder were fraudulently obtained. The Hodeses contend that they began discussions with the home builder in the summer of 1997, when they decided to enlarge their home in anticipation of the birth of their daughter's twins. The twins were not going to live with them, but the Hodeses wanted more space so that they could babysit the twins. On December 7, 1997, the Hodeses entered into a contract with the builder and gave him a [$225,000] cash deposit. The contract estimated that the addition would cost $190,000 plus the builder's 15% fee, but no more than a total of [$225,000]. The contract called for a 1056 square foot addition to the Hodeses' 3700 square foot home. The addition included an office, an enlarged family room and modifications to the master bedroom. The Hodeses had purchased this home in 1989 for $545,000.

On January 6, 1998, Jenkins and Hood filed involuntary Chapter 7 bankruptcy petitions against Phillip Hodes and Barbara Hodes. As of January 6, the builder had not commenced construction of the addition and was in possession of the [$225,000] deposit.

The construction commenced sometime after January 6. On February 23, 1998, Jenkins and Hood filed a motion under § 303(f) [2] to stop the construction and to restrict the Hodeses' use of the deposited funds prior to entry of the orders for relief. The parties attempted to resolve this contested § 303(f) motion and on March 2, 1998, recited the terms of their settlement to the Court. The settlement included the Hodeses' agreement to obtain a mortgage on their home and use these borrowed funds to pay $290,000 to Jenkins and Hood. Later, when the Hodeses failed to pay the $290,000, Jenkins and Hood filed a motion to compel settlement. In their submissions on the exemption issue, the parties did not refer to this motion to compel. The courtroom minute sheet from the hearing on October 28, 1998, states that Jenkins and Hood agreed to withdraw their motion to compel, but they have not yet submitted a journal entry withdrawing the motion.

In the meantime, construction of the home addition proceeded. On April 16, 1998, the Hodeses consented to the entry of orders for relief in their cases on that date. At the time of the entry of the orders for relief, the builder had expended $8,966.67 of the deposit. As of October 28, 1998,[3] the builder had expended a total of $164,837.24.

*In re Hodes*, 235 B.R. 104, 105–06 (Bankr. D.Kan.1999).

---

**2.** 11 U.S.C. § 303(f) provides that unless the Court orders otherwise, and until an order for relief is entered, the debtor may continue to use, acquire or dispose of property as if the involuntary case concerning the debtor had not been commenced.

**3.** This is the date Jenkins and Hood filed their Supplemental Brief in Support of Objection to Exemptions.

■ The court notes that Appellants have also pinpointed additional facts in their Appeal Brief which they contend are undisputed in the record below, but which are not specifically contained in the bankruptcy court's findings of fact. Although this court may look to facts in the record that are not specifically mentioned by the bankruptcy court to determine whether the bankruptcy court's factual findings and inferences are clearly erroneous, *Davis v. Mather (In re Davis)*, 239 B.R. 573, 577 (10th Cir. BAP 1999) (citations omitted), it is not permitted to decide factual issues not addressed by the bankruptcy court, *Robinson*, 987 F.2d at 669 (citation omitted). Because the parties do not dispute the bankruptcy court's findings of fact in this case, the court need not look to the Appellants' additional facts to determine whether the bankruptcy court's findings of fact are clearly erroneous. To the extent that Appellants impliedly request that this court make its own factual findings based on these additional facts, the court is not permitted to do so.

## III. DISCUSSION

Appellants advanced three arguments to the bankruptcy court in support of their objection to Appellees/Debtors' $225,000 homestead exemption. The bankruptcy court rejected all three. The bankruptcy court first found without merit Appellants' argument that Appellees/Debtors waived their homestead exemption as part of the proposed settlement of the contested § 303(f) motion. The bankruptcy court concluded that: (1) the settlement was never reached; (2) Appellants represented to the court that they were withdrawing the contested § 303(f) motion; and (3) even if the proposed settlement agreement included a waiver of the exemption, such a waiver by executory contract would be unenforceable as contrary to public policy. The bankruptcy court also rejected Appel-

lants' contention that Appellees/Debtors lost their claim of exemption by engaging in fraudulent conduct. Specifically, the bankruptcy court found that Appellants had presented insufficient evidence to establish that Appellees/Debtors engaged in fraudulent conduct and the mere fact that Appellees/Debtors used nonexempt assets to fund a $225,000 addition to a $545,000 home was not prima facie evidence of fraud. Finally, the bankruptcy court disagreed with Appellants' argument that Appellees/Debtors were prohibited from claiming as an exemption the cost or value of any improvements made to the homestead after the involuntary bankruptcy petitions were filed, or in the alternative, after the orders for relief were entered. The bankruptcy court reasoned that Kansas public policy dictates that involuntary debtors should be permitted to claim as exempt any funds used to improve a homestead, regardless of whether actual construction was completed before the involuntary petitions were filed or orders for relief entered.

On appeal, Appellants appear to raise seven specific arguments. Appellants contend that Appellees/Debtors are not entitled to claim the $225,000 cash deposit as a homestead exemption because: (1) a cash deposit derived from the sale of nonexempt property does not constitute property which can qualify for a homestead exemption because it is neither a homestead nor an improvement to a homestead; (2) any improvements made to the homestead from the $225,000 deposit must have been completed by the time the involuntary petitions were filed, or at the latest, at the time the orders for relief were entered, and in this case no funds had been expended prior to the filing of the involuntary petitions and only $8,966.67 had been expended at the time the orders for relief were entered; (3) the Kansas exemption

laws are intended to protect the destitute and Appellees/Debtors are not destitute; (4) use of the $225,000 deposit after the involuntary petitions were filed violated the automatic bankruptcy stay; (5) Appellees/Debtors lost their ability to use the exemption by engaging in fraudulent conduct; (6) Appellees/Debtors waived or should be estopped from asserting the exemption as a result of their purported settlement of the contested § 303(f) motion; and (7) Trustee Rajala had a "special interest" in Appellees/Debtors' homestead.

By enacting K.S.A. § 60–2312, Kansas has opted out of the federal bankruptcy exemption scheme outlined in 11 U.S.C. § 522(d). *Carbaugh v. Carbaugh (In re Carbaugh)*, 278 B.R. 512, 521 (10th Cir. BAP 2002) (citation omitted). As a result, the existence and extent of Appellees/Debtors' homestead exemption is governed by Kansas state law. See *Kretzinger v. First State Bank of Waynoka (In re Kretzinger)*, 103 F.3d 943, 945 (10th Cir. 1996) (citations omitted). In Kansas, a homestead exemption is established by both constitutional and statutory provision. See Kan. Const. art. 15, § 9; K.S.A. § 60–2301. Section 60–2301, which is substantially the same as Kansas's constitutional homestead exemption, specifically provides:

> A homestead to the extent of 160 acres of farming land, or of one acre within the limits of an incorporated town or city, or a manufactured home or mobile home, occupied as a residence by the owner or by the family of the owner, or by both the owner and the family thereof, together with all the improvements on the same, shall be exempted from forced sale under any process of law, and shall not be alienated without the joint consent of husband and wife, when that relation exists; but no property shall be exempt from sale for taxes, or for the payment of obligations contracted for the purchase of said premises, or for the erection of improvements thereon. The provisions of this section shall not apply to any process of law obtained by virtue of a lien given by the consent of both husband and wife, when that relation exists.

### A. Cash Deposit as Homestead Exemption

The court considers Appellants' first two arguments together because they combine to form the central question of this appeal, i.e., whether the law permits Appellees/Debtors to claim the $225,000 they prepaid to their building contractor as a homestead exemption when no funds had been expended as of the date of the filing of the involuntary petitions and only $8,966.67 had been expended by the time the orders for relief were entered.

■ The court must begin by deciding what the appropriate date is for determining what property is exempt in an involuntary bankruptcy case. Appellants contend that an exemption is determined on the date the involuntary bankruptcy petition is filed; Appellees/Debtors argue that the date the order for relief is entered controls. The bankruptcy court agreed with Appellees/Debtors, and so does this court.

In arguing that the court should look to the date the involuntary petition is filed, Appellants focus primarily on the language of 11 U.S.C. § 522(b)(2)(A). That section permits a debtor to claim as exempt "any property that is exempt under … State or local law that is applicable on the date of the filing of the petition. . . ." 11 U.S.C. § 522(b)(2)(A) (emphasis added). According to Appellants, § 522(b)(2)(A) requires that the court focus not only on the law in existence at the time the involuntary petition was filed, but also on the facts in existence at that time. Although the court

agrees that § 522(b)(2)(A) locks in place whatever state or local exemption law existed at the time the petition was filed, it does not believe that, in involuntary bankruptcy cases, § 522(b)(2)(A) likewise mandates a focus on the facts as they existed at the time the petition was filed.

In *White v. Stump*, the United States Supreme Court provided the following guideline for fixing the operative date for determining exemptions:

> When the law speaks of property which is exempt and of rights to exemptions, it of course refers to some point of time. In our opinion this point of time is the one as of which the general estate passes out of the bankrupt's control, and with respect to which the status and rights of the bankrupt, the creditors and the trustee in other particulars ·are fixed.

266 U.S. 310, 313, 45 S.Ct. 103, 69 L.Ed. 301 (1924). In a voluntary bankruptcy case, like White and the vast majority of cases cited by Appellants in their briefs, the debtor loses authority to use, acquire, or dispose of property once he or she files a voluntary petition. Because the debtor loses control over the property in his or her estate at that time, the operative date for determining what property is exempt in a voluntary case is, understandably, the date the petition was filed. In an involuntary case, however, 11 U.S.C. § 303(f) specifically allows a debtor to continue to use, acquire, or dispose of property after the petition is filed and until the order for relief is entered unless the bankruptcy court orders otherwise. Because the debtor in an involuntary bankruptcy case retains the ability to control his or her property, the court believes that the proper date for determining what property is exempt in such a case is the date the order for relief is entered.

The court notes that it is supported in this position by at least two other courts that have specifically examined the issue. See *Wilson v. Davis (In re Wilson)*, 62 B.R. 43, 45–46 (E.D.Tenn.1985); *In re Andreotti*, 16 B.R. 28, 30–31 (Bankr.E.D.Cal. 1981); see also *First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339, 1346 (9th Cir.1986) (citing Andreotti with approval for the proposition that it would be inequitable to use the date the petition was filed in an involuntary case for purposes of determining whether a debt should be discharged); *In re Peacock*, 119 B.R. 605, 609 (Bankr.N.D.Ill.1990) (citing Wilson and Andreotti for purposes of noting "the distinction between changes in exemption law and changes in property owned subsequent to filing of an involuntary petition"); *In re Dakota Lay'd Eggs*, 68 B.R. 975, 977 (Bankr.D.N.D.1987) (citing Andreotti with approval for the proposition that the estate does not pass from the debtor to the trustee in an involuntary case until the order for relief is entered). The only case cited by Appellants that has stated that the petition date is the proper date for determining exemptions in an involuntary bankruptcy case did not address the issue of § 303(f)'s effect on the debtor's right to control his or her property after the filing of the petition. See *Royal v. Pancratz (In re Pancratz)*, 175 B.R. 85, 91 (D.Wyo. 1994). Given the void of analysis on this issue in Pancratz, the court does not find the opinion persuasive.

■ Having concluded that exemptions in an involuntary case are determined as of the date the order for relief is entered, the court turns to whether Appellees/Debtors' claimed homestead exemption in this case was proper. The bankruptcy court found that at the time the orders for relief were entered, $8,966.67 of the $225,000 deposit had been expended on the addition to the Appellees/Debtors' home. Given that con-

struction had already commenced, the bankruptcy court concluded that Appellees/Debtors were entitled to claim as exempt any improvements made before the order for relief was entered, as well as any improvements that were made from the deposit after the order was entered. This court agrees with the bankruptcy court's conclusion.

The Kansas courts have held that the purchase of a homestead with a view to occupancy followed by occupancy within a reasonable time is sufficient to merit a homestead exemption even if the homestead itself is not completed. *Gilworth v. Cody,* 21 Kan. 702, 705–06 (1879) (quoting *Edwards v. Fry,* 9 Kan. 417, 425 (1872)) (" 'Repairs may have to be made, or buildings partially or wholly erected. Now the law does not wait till all this has been done, and the purchaser actually settled in his new home, before attaching to it the inviolability of a homestead. A purchase of a homestead with a view to occupancy followed by occupancy within a reasonable time, may secure *ab initio* a homestead inviolability.' "). Like the bankruptcy court, this court sees no legitimate reason why this rule should not apply with equal force to improvements to homesteads. The Appellees/Debtors in this case purchased an addition to their home. The construction on the addition commenced prior to the entry of the orders for relief and continued thereafter until at least October 28, 1998, at which point the builder had expended at least $164,837.24 of the $225,000. As noted by the bankruptcy court, Appellants Jenkins and Hood never fully prosecuted their § 303(f) motion to halt Appellees/Debtors' use of the funds or their motion to compel settlement of the § 303(f) motion, and Appellant Rajala nev-

er moved to recover any of the funds on deposit with the builder. Given these circumstances, the court believes that Appellees/Debtors are entitled to claim as an exemption whatever amount of the $225,000 was ultimately expended on the addition to their home.

Appellants argue that the bankruptcy court erred by concluding that the Appellees/Debtors' cash deposit qualified as a homestead exemption because the deposit was obtained from the conversion of nonexempt assets, while the cases relied upon by the bankruptcy court all involved situations where the funds used to purchase the homestead at issue were proceeds from the sale of a previous, undisputed exempted homestead.[4] Appellants' focus on the whether the funds at issue were obtained from previously exempt or nonexempt property is misguided. "The right to convert non-exempt assets into exempt assets is well settled in Kansas." *Douglas County Bank v. Fine (In re Fine),* 89 B.R. 167, 174 (Bankr.D.Kan.1988) (citing *Metz v. Williams,* 149 Kan. 647, 88 P.2d 1093 (1939); *McConnell v. Wolcott,* 70 Kan. 375, 78 P. 848 (1904)). The fact that the bankruptcy court cited cases where the funds at issue were proceeds from exempt assets does not defeat the exemption. The bankruptcy court's reasoning on this issue was sound; this court will not disturb it on appeal.

**B. Purpose of Homestead Exemption**

■ Appellants also argue that Appellees/Debtors are not entitled to claim the $225,000 cash deposit as a homestead exemption because the Kansas exemption laws are intended to protect the destitute and Appellees/Debtors are not destitute. Although the court recognizes that the Kansas courts have stated that the pur-

---

4. The bankruptcy court cited the following cases: *Int'l Harvester Credit Corp. v. Ross,* 217 Kan. 683, 538 P.2d 655 (1975); *First Nat'l Bank v. Dempsey,* 135 Kan. 608, 11 P.2d 735 (1932); and *Kessler v. Frost,* 103 Kan. 711, 175 P. 967 (1918).

pose and policy of the state's exemption laws is to protect debtors from being reduced to destitution, *Mahone v. Mahone,* 213 Kan. 346, 517 P.2d 131, 134 (1973) (citation omitted), it will not reverse the bankruptcy court's decision to grant Appellees/Debtors' their homestead exemption based on that premise. As an initial matter, the bankruptcy court made no finding that Appellees/Debtors were not destitute, and this court is not permitted to make such a finding on appeal. Equally important, however, is the fact that the Kansas homestead exemption, unlike some of the state's other exemption laws, is unlimited. *Nohinek v. Logsdon,* 6 Kan. App.2d 342, 628 P.2d 257, 258 (1981) (distinguishing the Kansas homestead exemption from the Kansas personal property exemption, which limits exemption claims of personal property to that property which is "reasonably necessary"). The unlimited nature of the homestead exemption weighs heavily against Appellants' argument that the exemption should not be granted to an individual simply because that individual might not be considered destitute.

## C. Violation of Bankruptcy Stay

Appellants next argue that Appellees/Debtors' conversion of portions of the $225,000 cash deposit into the addition to their home constituted a violation of 11 U.S.C. § 362(a)(3), which "operates as a stay ... of ... any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate...." Appellants argue that the stay was invoked once the involuntary bankruptcy petitions were filed against Appellees/Debtors on January 6, 1998, or, in the alternative, when the orders for relief were entered on April 16, 1998, and that any actions taken in violation of the stay are void.

Appellees/Debtors note that Appellants failed to raise this argument to the bankruptcy court, and they ask this court to disregard it on appeal. Appellants do not dispute that they failed to raise the argument below, but respond as follows: "Debtors agreed at trial that the determinative date was the petition date, making irrelevant the automatic stay which arises thereafter. The Bankruptcy Court injected post-petition changes of fact into the dispute making the automatic stay relevant for the first time on appeal." Not only is this contention confusing in and of itself, but the court fails to comprehend how it has any bearing on Appellants' ability to raise this argument below. Appellants themselves argue that the automatic stay supposedly commenced on the petition date, January 6, 1998. Appellants Jenkins and Hood acknowledged in their § 303(f) motion, filed with the bankruptcy court on February 23, 1998, that construction on the addition had begun approximately one week earlier. Appellants Jenkins and Hood's Supplemental Brief in Support of Objection to Exemptions, which was faxed to counsel on October 27, 1998— the day before Appellees/Debtors allegedly made their representation at trial about the petition date being the determinative date—acknowledged that $8,966.67 had been expended on the house addition before the entry of order for relief, and $164,837.24 had been expended in total. Appellants have contended throughout these proceedings that the $225,000 in funds constituted nonexempt assets. If they believed that the expenditures from those funds violated the automatic stay provision, they could have so argued to the bankruptcy court. Because they did not, the court will not consider the argument on appeal. *Tele–Communications, Inc. v. Comm'r of Internal Revenue,* 104 F.3d 1229, 1232 (10th Cir.1997) (citation omitted) ("Generally, an appellate court will

not consider an issue raised for the first time on appeal.").

### D. Fraudulent Conduct

■ Appellants next contend that Appellees/Debtors lost their ability to claim the $225,000 as a homestead exemption because they engaged in fraudulent conduct by converting their nonexempt assets into exempt assets for purposes of avoiding Appellants Jenkins' and Hood's efforts to collect the $4 million judgment against them. The bankruptcy court rejected this argument, finding that Appellants had presented insufficient evidence to establish that Appellees/Debtors had engaged in fraudulent conduct and the mere fact that Appellees/Debtors used nonexempt assets to fund a $225,000 addition to a $545,000 home was not prima facie evidence of fraud. "[A] bankruptcy court's finding of fraudulent intent on the part of a debtor is a finding of fact, rather than a conclusion of law...." *Peoples State Bank & Trust Co. v. Sayler (In re Sayler)*, 98 B.R. 536, 538 (D.Kan.1987) (citation omitted). Here, the bankruptcy court could find no fraudulent intent on the part of Appellees/Debtors, and because the parties do not specifically contest the bankruptcy court's findings of fact, the court will not disturb this ruling on appeal.

### E. Waiver or Estoppel through Settlement

■ Appellants next argue that Appellees/Debtors waived or should be estopped from asserting the exemption as a result of their purported settlement of the contested § 303(f) motion. The parties recited the terms of the purported settlement to the bankruptcy court on March 2, 1998. The terms included Appellees/Debtors' agreement to obtain a $290,000 mortgage on their home, which they would use to pay Appellants Jenkins and Hood. The bankruptcy court found in its opinion that

the settlement was never ultimately reached. Given that, this court cannot conclude that Appellees/Debtors waived their right to assert the exemption as part of the settlement. Moreover, the court agrees with the bankruptcy court that to the extent that the settlement agreement, even if it was enforceable, contained an express waiver of the exemption, such a waiver by executory contract is unenforceable. *Celco, Inc. of Am. v. Davis Van Lines, Inc.*, 226 Kan. 366, 598 P.2d 188, 191 (1979).

■ Similarly, the court cannot conclude that Appellees/Debtors are estopped from asserting the exemption as a result of the settlement agreement. Appellants argue that Appellees/Debtors should be estopped because they continued construction to the addition to their home while allegedly leading Appellants Jenkins and Hood to believe that the settlement agreement would ultimately be performed. The bankruptcy court did not make any specific findings of fact on this issue. But the court believes that the bankruptcy court's finding that the settlement was never reached is sufficient to reject the argument. The Kansas Supreme Court recently reiterated the elements of equitable estoppel in *Rockers v. Kansas Turnpike Authority*:

■ A party asserting equitable estoppel must show that another party, by its acts, representations, admissions, or silence when it had a duty to speak, induced it to believe certain facts existed. It must also show it rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts. 268 Kan. 110, 991 P.2d 889, 894 (1999) (quoting *United Am. State Bank & Trust Co. v. Wild W. Chrysler Plymouth, Inc.*, 221 Kan. 523, 561 P.2d 792, 795 (1977)). Given the bankruptcy court's finding that no set-

tlement agreement was actually reached, the court cannot conclude in this case that any reliance on such agreement by Appellants was reasonable. Therefore, Appellants' estoppel argument must also be rejected.

### F. Special Interest

Finally, Appellants maintain that Trustee Rajala had a "special interest" in the $225,000 deposit for the addition, and that Appellants should, therefore, be able to sell the property to recover the allegedly converted funds. Appellees/Debtors contend that Appellants failed to raise this argument to the bankruptcy court and ask the court to disregard it on appeal. Appellants do not deny that they failed to raise the argument below. As was the case with Appellants' automatic stay argument, the court concludes that Appellants could have, but did not, previously raise this argument. The court will therefore not consider the argument on appeal. *Tele–Communications, Inc.*, 104 F.3d at 1232.

IT IS, THEREFORE, BY THE COURT ORDERED that the decision contained in the June 16, 1999 Memorandum Opinion and Order of the United States Bankruptcy Court and the judgment stemming therefrom is affirmed.

Cases 99–2293–GTV and 99–2294–GTV are therefore closed.

Copies of this order shall be transmitted to counsel of record for the parties.

**IT IS SO ORDERED.**