In re David B. GAUDREAULT, Debtor.

No. 03–13468–WCH.

United States Bankruptcy Court,
D. Massachusetts,
Eastern Division.

Sept. 2, 2004.

Michael L. Pierce, Kern, Hagerty, Roach & Carpenter, P.C, Wakefield, MA, for Debtor.

### MEMORANDUM OF DECISION ON SONYA L. SALKIN'S OBJECTION TO DEBTOR'S CLAIM OF EXEMPTION

WILLIAM C. HILLMAN, Bankruptcy Judge.

I.   Introduction

The matter before the Court is Sonya L. Salkin's ("Salkin") objection to the home-

stead exemption of David B. Gaudreault (the "Debtor"). The Debtor filed the prerequisite to a Massachusetts homestead, a Declaration of Homestead, after an involuntary petition was filed against him but before the order for relief was entered. Salkin, a judgment creditor, argues that because exemptions are determined on the date the bankruptcy petition is filed and the Debtor was not entitled to a homestead exemption on that date, her objection must be sustained. Alternatively, she argues that the Declaration is void because it was filed in violation of the automatic stay. I held a hearing on the objection and response and took the matter under advisement.

The following constitute my findings of fact and conclusions of law. For the reasons stated herein, I will enter an order overruling the objection.

## II. Background

The parties agree on the facts. In February of 2001, Salkin obtained a default judgment against the Debtor in excess of $2,000,000. She thereafter registered the same in Massachusetts. The execution was levied, recorded and suspended. In April of 2003, Salkin filed an involuntary petition against the Debtor. The Debtor filed an answer. In May of 2003, the Debtor recorded a Declaration of Homestead pursuant to Mass. Gen. Laws, ch. 188, § 1.[1] The Order for Relief entered on March 9, 2004. In Schedule C of his petition, the Debtor listed his residence as subject to his Massachusetts homestead exemption of up to $300,000. Also in his petition, the Debtor indicated that the Property is worth $450,000. He listed first and second mortgages in the total amount of $252,000.

In her objection to the homestead exemption, Salkin points to the language of 11 U.S.C. § 522(b)(2) which provides that a debtor may choose an exemption that is applicable on the day the petition is filed, also known as the petition date. The petition date is defined as the date on which a petition, voluntary or involuntary, is filed. 11 U.S.C. § 101(42). The case law from this district, she points out, supports her argument that exemptions are determined on the date of filing. *See e.g. In re Marrama*, 307 B.R. 332, 336 (Bankr.D.Mass. 2004) and *In re Robbins*, 187 B.R. 400, 403 (Bankr.D.Mass.1995). The case law further reflects that in Massachusetts, a declaration of homestead must be filed prior to voluntarily filing for bankruptcy relief citing for support *Shamban v. Masidlover*, 429 Mass. 50, 53, 705 N.E.2d 1136 (1999). Salkin argues that the application of 11 U.S.C. § 303(f) does not alter this result. Additionally, Salkin argues that by filing a declaration of homestead, the Debtor has violated the automatic stay.

The Debtor responds that the cases and case law upon which Salkin relies are inapplicable because they do not address the issue in this case, whether a debtor can take advantage of an exemption after an involuntary petition is filed but before the order for relief is entered, a time commonly known as the "gap period". The applicable cases, he contends, allow for such exemptions without deeming them violations of the automatic stay, citing *White v. Stump*, 266 U.S. 310, 45 S.Ct. 103, 69 L.Ed. 301 (1924), *Wilson v. Davis (In re Wilson)*, 62 B.R. 43, 45–46 (E.D.Tenn. 1985), *In re Peacock*, 119 B.R. 605, 609 (Bankr.D.Ill.1990), and *In re Andreotti*, 16 B.R. 28 (Bankr.D.Cal.1981). He asserts that the only case to the contrary, *Royal v. Pancratz (In re Pancratz)*, 175 B.R. 85, 91

---

**1.** Under Massachusetts law, a declaration of homestead must be recorded in order to obtain the benefits of a homestead. Mass. Gen. Laws ch. 188, § 2.

(D.Wyo.1994), should not be applied as it was poorly decided, citing *In re Hodes*, 287 B.R. 561 (D.Kan.2002).

At the hearing on the matter, Salkin urged the Court to adopt her argument first on the grounds that upon the filing of an involuntary petition an estate is created under 11 U.S.C. § 541 and the case law in Massachusetts applies the petition date in determining exemptions in a voluntary case. Second, she argued that upon the filing, the automatic stay came into effect and the Debtor lost his ability to exercise control over the Property and his filing violated the stay. With respect to the Debtor's plea for equitable treatment, Salkin explained that the involuntary petition is a tool that helps creditors and if this Court were to permit a post-filing homestead filing, creditors would lose the ability to freeze assets by filing such a petition.

In response to this latter argument, the Debtor explained that Salkin could have sought certain orders restraining his control over his property during the gap period but did not do so. Moreover, a debtor is entitled to a degree of control over the debtor's assets during the gap period. The Debtor urges that there is a difference between this issue in an involuntary case as opposed to the cases to which Salkin cites which were voluntary cases. To rule in favor of Salkin, the Debtor contends, would nullify § 303(f) and be contrary to Supreme Court precedent, the precedent set forth in applicable cases and indeed the intent of the Bankruptcy Code to give a debtor a fresh start.

III. Discussion

The issues before the Court is whether the Debtor is entitled to avail himself of a homestead exemption during the gap period and, if so, whether this action violated the automatic stay. As counsel to Salkin and the Debtor acknowledge, there is no guidance from this district and little national case law. While this Court did address the issue of a debtor who filed a Declaration of Homestead post-petition, see *In re Walsh*, Case No. 01–16459–WCH (Bankr.D. Mass. December 10, 2001), the case is inapplicable as the homestead was filed after the order for relief had entered in a voluntary case.

A. The Extent of An Exemption During the Gap Period

■ An involuntary petition is filed pursuant to 11 U.S.C. § 303. The date of the filing is the petition date. 11 U.S.C. § 101(42). Upon the filing of the petition, service of a summons is issued upon the debtor. If a debtor fails to answer or submit a meritorious defense or objection, the bankruptcy court will enter an order for relief. See 11 U.S.C. § 303(h) and Fed. Rules Bankr.P. 1010, 1011 and 7004. The filing of the involuntary petition creates an estate pursuant to 11 U.S.C. § 541 which is subject to the automatic stay provisions of 11 U.S.C. § 362.

Until the order for relief enters after an involuntary petition is filed and unless a court orders otherwise, "[n]otwithstanding section 363 of this title . . . the debtor may continue to use, acquire, or dispose of property as if an involuntary case concerning the debtor had not been commenced." 11 U.S.C. § 303(f).[2] Before the order for relief, a party in interest may seek the appointment of an interim trustee to take possession of the property of the estate. 11 U.S.C. § 303(g).

■ The Bankruptcy Code permits a debtor to obtain certain federal or state

**2.** Section 363 contains a variety of notice provisions for debtors and trustees who intend to use, sell or lease property of the estate other than in the ordinary course.

exemptions pursuant to 11 U.S.C. § 522(b). Under that section "an individual debtor may exempt from property of the estate the property listed in paragraph (1) or, in the alternative, paragraph (2) of this subsection." Under subsection (2)(A), a debtor may exempt property under the "State or local law that is applicable on the date of the filing of the petition ..." 11 U.S.C. § 522(b)(2)(A). Exemptions should be construed liberally in favor of a debtor. *Dwyer v. Cempellin,* 189 B.R. 230, 234 (D.Mass.1995).

In the case of *Jenkins v. Hodes (In re Hodes),* 287 B.R. 561, 564 (D.Kan.2002), the debtors had paid a builder a deposit of over $200,000 to start construction on a addition to their house. *Id.* Shortly thereafter, an involuntary petition was filed against them. None of the deposit had been expended at the time of the filing of the petition and less than 10% of the deposit had been expended by the time the order for relief was entered. *Id.* The petitioning creditors objected to the debtors' ability to include the deposit as part of their homestead exemption. *Id.* at 565. In Kansas, a homestead exemption includes an amount of acreage and all improvements thereon. *Id.* at 566. The petitioning creditors argued that the homestead must extend only to the facts that existed at the time of the filing of the involuntary petition. The court started its discussion by ruling that while it "agrees that § 522(b)(2)(A) locks in place whatever state or local exemption law existed at the time the petition was filed, it does not believe that, in involuntary bankruptcy cases, § 522(b)(2)(A) likewise mandates a focus on the facts as they existed at the time the petition was filed." *Id.* at 567.

In support of its conclusion, the court referred to *White v. Stump,* 266 U.S. 310, 313, 45 S.Ct. 103, 69 L.Ed. 301 (1924), where the Supreme Court referred to determining a right to exemption up to the time when the property passes out of the control of the debtor. *Id.* Because an involuntary debtor does not lose control over the debtor's property until the order for relief enters, that must be the point at which the extent of an exemption is decided. The court affirmed the bankruptcy court's ruling that the debtors were entitled to include in their homestead exemption the monies used to build an addition on their home. *Id.* at 568. The court did not address the issue of the stay violation as it had not been raised in the bankruptcy court. *Id.*

Similarly, in *Wilson v. Davis (In re Wilson),* 62 B.R. 43, 45 (E.D.Tenn.1985), the debtors converted non-exempt assets into exempt assets during the gap period. The bankruptcy court determined that exemptions must be determined on the petition date. *Id.* In reversing the bankruptcy court on this issue, the district court held as follows:

However, while Section 522(b)(2)(A) does provided that the debtor may exempt from property of the estate any property that is exempt under federal law or state law that is applicable on the date of the filing of the petition, this section can be read to fix the law controlling the exemptions not to fix the property subject to these exemptions at the time of the filing of the petition. At least two courts which have considered this question have reasoned that because Section 303(f) permits the debtor to continue to manage his estate until the order for relief is entered, the rights of the parties do not become fixed, and the general estate of the debtor does not pass into the hands of the trustee until that time. In addition, because a petitioner in a voluntary bankruptcy may convert non-exempt property into ex-

empt property immediately before filing in bankruptcy without defrauding his creditors, the involuntary bankrupt should also be permitted the same opportunity to maximize his rights to the exemptions permitted under the bankruptcy law. *See In re York Chemical Industries, Inc.,* 30 B.R. 583, 585 ([Bankr.]D.S.C.1983); *In re Andreotti,* 16 B.R. 28, 31 ([Bankr.E.]D.Cal.1981). Because Section 303(f) permits the Bankruptcy Court to stay any business transactions it fears will jeopardize the rights of creditors, and because that court always has the power to set aside any transactions that defraud creditors, the Court is of the opinion that the correct date for determining which property of the debtor will be subject to exemptions in an involuntary bankruptcy case is the date on which the order for relief is filed.

*Id.* at 45–46. *See also, In re Andreotti,* 16 B.R. 28,31 (Bankr.E.D.Cal.1981) ("Also the conclusion reached on this issue is strongly supported by the policy inherent in the Code to provide both the voluntary and involuntary debtor with a 'fresh start'.")

In *In re Pancratz,* 175 B.R. 85 (D.Wyo. 1994), an order for relief entered after an involuntary petition was filed. The Chapter 7 trustee then filed an adversary proceeding to recover assets which the debtors had transferred into a self-settled trust. Thereafter, the debtors amended their schedules to claim exemptions in two annuity policies and a car. The bankruptcy court overruled the objections to the exemptions in the policies but sustained the objection to the car exemption. The district court agreed with the bankruptcy court that, based solely upon the plain language of 11 U.S.C. § 522(b)(2)(A), exemptions must be determined as of the date of the filing of an involuntary petition.

In *Pancratz,* however the issue of the petition date versus the date for order for relief was only relevant with respect to the car exemption as the applicable exemption statute was amended after the case was filed but before the order for relief had entered. *Id.* at 91. Indeed, the courts which have considered whether a debtor can take advantage of an exemption statute enacted or amended during the gap period, have routinely held that the petition date is the operative date based upon the plain language of the statute. *In re Butcher,* 75 B.R. 441, 443 (E.D.Tenn.1987), *aff'd without opp.,* 848 F.2d 189; *In re Peacock,* 119 B.R. 605 (Bankr.N.D.Ill. 1990); *In re Fingado,* 113 B.R. 37, 43 (Bankr.D.N.M.1990). *See also Tanzi v. Comerica Bank (In re Tanzi),* 297 B.R. 607, 611 (9th Cir. BAP 2003) ("The Objection raised the question whether Debtors can avail themselves of Florida's exemption law, not whether they can claim an exemption on the Residence. *Andreotti* addresses only the latter question, and its reasoning does not change the plain meaning of § 522(b)(2)(A).") As the *Wilson* court pointed out, however, the issue of the applicable statute is not the same as what property is included in the applicable statute. *In re Wilson,* 62 B.R. at 45–46.[3]

■ I agree and indeed I have held that a debtor is only entitled to exemptions which exist as of the petition date. *In re Walsh,* Case No. 01–16459–WCH, Bankr.D. Mass. December 10, 2001. I agree with the Debtor that the plain mean-

---

**3.** The court in *Peacock,* however, stated that "[t]o the extent that either *Wilson* or *Andreotti* might be read more broadly to apply to the facts here, this Court declines to follow such a reading in light of the other authority and clear statutory provisions previously cited." 119 B.R. at 609. This statement is dicta and is unpersuasive as the court did not have the opportunity to consider the exact issue before this Court.

ing of 11 U.S.C. § 522(b)(2)(A) does not address the property which is encompassed by the permitted exemption. The Code permits a debtor wide latitude during the gap period. During that period, the Code also protected Salkin with a variety of methods of relief of which she did not avail herself. Based upon these complementary statutes and the persuasive reasoning set forth in *In re Wilson*, I agree with the Debtor that the filing of the Declaration of Homestead during the gap period did not run afoul of 11 U.S.C. § 522(b)(2)(A). As such, I will overrule the objection on this ground.

B.  Whether Filing the Declaration of Homestead Violated the Automatic Stay.

■ Salkin contends that by filing the Declaration of Homestead, the Debtor violated the automatic stay. At the hearing, the parties did not dispute that such a filing is not a transfer. *See In re Messia*, 184 B.R. 176, 177 (Bankr.D.Mass.1995). I have ruled that the filing was consistent with the Debtor's authorization under 11 U.S.C. § 303(f). That section permits a Debtor to use, dispose, or acquire property during the gap period notwithstanding § 363. Section 363 allows a trustee to use, sell or lease property of the estate in the ordinary course of business after the trustee complies with certain notice provisions. 11 U.S.C. § 362(a)(3) stays "any act to

obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." [4]

These statutes when read together conflict. Section 303(f) permits a debtor control over the property of the estate "as if an involuntary case concerning the debtor had not been commenced." The statute excludes application of § 363 which arguably would not apply in any event because a gap debtor is not a trustee. *See e.g.* J. Mullin, Comment, *Bridging the Gap: Defining the Debtor's Status During the Involuntary Gap Period*, 61 U. Chi. L.Rev. 1091 (1994). Presumably the exclusion of § 363 from § 303(f) was intended only to absolve debtors from the notice provision, *id.* at 1095, because what is permitted in § 363, use, sell or lease other than in the ordinary course, is what Congress permitted a gap debtor to perform under § 303(f), use, acquire or dispose as if the case had not been commenced.[5] Under § 362(a)(3) (staying "any act to exercise control over property of the estate."), a debtor would have to seek relief from stay for any acts under either of these two statutes. Such a reading is in direct conflict with the directive that a gap debtor is entitled to act as though a case had not been commenced.

Judge Rosenthal recently addressed the relationship between §§ 303(f) and 362 in *Bankvest Capital Corp. v. Fleet Boston (In*

---

4.  Contrary to Salkin's argument, I did not rule in *In re Walsh*, Case No. 01–16459–WCH, Bankr.D. Mass. December 10, 2001 that the debtor had violated the automatic stay. I was simply citing to a case which had raised that issue.

5.  The House and Senate Reports (Reform Act of 1978) indicate that

> Subsection (f) is a clarification and a change from existing law. It permits the debtor to continue to operate any business of the debtor and to dispose of property the same as if the case had not been com-

menced. The court is permitted, however, to control the debtor's powers under this subsection by appropriate orders, such as where there is a threat that the debtor may attempt to abscond with assets, dispose of them at less than their fair value, or dismantle his business, all to the detriment of the debtor's creditors.

HR Rep No. 595, 95th Cong, 1st Sess 323 (1977); S Rep No. 989, 95th Cong, 2d Sess 33 1978, U.S.Code Cong. & Admin.News 1978, pp. 5963, 6279, 5787, 5819.

*re Bankvest Capital Corp.),* 276 B.R. 12, 26 (Bankr.D.Mass.2002). In that case, the debtor had made payments to Fleet during the gap period and the creditors' committee asserted that Fleet had violated the automatic stay. *Id.* Fleet defended its actions by claiming that the Debtor was entitled to make these payments under § 303(f). *Id.* Judge Rosenthal ruled that the plain language of §§ 303(f) and 362 confirms that automatic stay comes into effect immediately upon the filing of an involuntary petition, rejecting a minority view that it does not come into effect until the entry of the order for relief. *Id.* at 26–27. In further support he ruled that " § 303(f) refers to an involuntary debtor using its property to carry on its business. It does not address a creditor taking the property." *Id.* He concluded that "[t]here is nothing in the Code or the underlying policies of section 362 (including the protection and preservation of assets for the benefit of all creditors) that suggests that an estate, however created, should not be protected by the automatic stay." *Id.*

On appeal, the district court agreed. *Fleet National Bank v. Gray (In re BankVest Capital Corp.),* 2003 WL 1700978 (D.Mass.2003). With respect to the issue of the application of the automatic stay, the court recognized that a majority of courts have ruled that the automatic stay applies upon the filing of an involuntary petition. *Id.* at *6. As to the tension between §§ 303(f) and 362, the court wrote:

> To be sure, the Code does grant an involuntary debtor the ability to operate during the gap period. 11 U.S.C. § 303(f). [FN7] Nevertheless, the fact that section 303(f) specifically exempts debtors from § 363 of the Code, but does not exempt debtors from any other Code sections, indicates that the affairs of involuntary debtors are subject to all other sections of the code, including

> § 362, the automatic stay provisions.... In any event, § 303(f) does not by terms provide protection for a creditor such as Fleet. Furthermore, § 362 states that 'a petition filed under section 301, 302 or 303 of this title... operates as a stay, applicable to all entities ...' 11 U.S.C. § 362.

*Id.*

The parties appealed the matter to the First Circuit. *Fleet National Bank v. Gray,* 375 F.3d 51 (1st Cir.2004). The matter of the stay violation was not at issue in this appeal. In a footnote, the court stated that they were proceeding "in this opinion on the assumption, also held by the bankruptcy and district courts, that a violation occurred and that the ... avoidance of Fleet's receipt of those payments was in order except for reasons otherwise discussed herein." *Id.* at 56 n. 1. In a later footnote, the court again referred to the automatic stay and explained that "Fleet has provided no coherent grounds for us to conclude that its retention of the gap payments was permissible and therefore that avoidance would be improper. Accordingly, we shall assume that the decisions below were correct insofar as they found that the avoidance would otherwise be in order, ..." *Id.* at 61 n. 9.

The First Circuit in *Bankvest* and indeed the lower court decisions which preceded it addressed the interplay between §§ 303(f) and 362 but did not squarely address the actions of a debtor who takes advantage of an exemption during the gap period. Indeed Judge Rosenthal refers to § 303(f) as allowing a debtor to conduct business but preventing a creditor from taking advantage of that position. *Bankvest* is inapposite to the issue before me.

In his Comment, Joseph Mullin sets forth the conflicts and ambiguities that arise in the Code during the gap period. J. Mullin, Comment, *Bridging the Gap: Defining the Debtor's Status During the Involuntary Gap Period*, 61 U. Chi. L.Rev. 1091 (1994). He specifically addresses the conflict between the aforementioned statutes. *Id.* at 1096. In this instance, the well-known canon of statutory construction instructs me that the specific statutory provisions govern the general. *Trafalgar Capital Assoc., Inc. v. Cuomo*, 159 F.3d 21, 27 (1st Cir.1998). As such, the specific statutory provisions of what rights a debtor retains during the gap period prevail over the more general provisions of § 362(a)(3). There are safeguards in place under the Code which prevent § 303(f) from leaving a debtor "free to wander the financial meadows." *In re Acelor*, 169 B.R. 764, 765 (Bankr.S.D.Fla. 1994). Accordingly, I conclude that § 362(a)(3) does not apply here where an involuntary Debtor has recorded a Declaration of Homestead during the gap period.

## IV. Conclusion

For the reasons set forth herein, I will enter an order overruling Sonya L. Salkin's Objection to the Debtor's Claim of Exemption.